[S. F. No. 2836.   Department One.—January 18, 1904.]

## GEORGE E. HARTER, Appellant, v. CITY OF SAN JOSE et al., Respondents.

PUBLIC PARK—DEDICATION BY LEGISLATURE—POWER OF LEASE UNDER CHARTER—INJUNCTION BY TAXPAYER—DISSOLUTION.—Where a public park of several hundred acres, at a distance of seven miles from the center of a city, was never dedicated by individuals, but was originally surveyed for a park by the city authorities, and was dedicated as a public park by an act reincorporating the city, and such act and each subsequent charter of the city, including the present charter, approved by concurrent resolution of the legislature, authorized a lease of some portion of the park, and a lease of two and a half acres thereof was made for hotel purposes, as provided in its present charter, in such a way as not in any manner to restrict or interfere with the free use of the waters or grounds of the park by the public, and the lease was for the evident benefit of the public and of the city, a taxpayer cannot sustain an injunction to prevent the execution of such lease; and a temporary injunction issued at his suit was properly dissolved.

ID.—CHARTER—CIVIL CODE.—The injunction was properly dissolved, whether the lease is to be deemed authorized by the express terms of the city charter or is subject to the limitations of sections 711 and 718 of the Civil Code. The lease, if subject to those sections, would be valid as to the period allowed thereby, and only void as to the excess of the period.

APPEAL from a judgment of the Superior Court of Santa Clara County and from an order dissolving an injunction. A. L. Rhodes, Judge.

The facts are stated in the opinion.

Henry French, Rodgers, Paterson & Slack, Charles W. Slack, and Jerome L. Van Dewerker, for Appellant.

William A. Beasley, for Respondents.

COOPER, C.—Upon the filing of the complaint in this action the court below granted a temporary injunction. Afterwards an amended complaint was filed. To this complaint defendant demurred, and at the same time moved to dissolve the temporary injunction. The court sustained the demurrer and made an order dissolving the injunction. Judgment was thereupon entered in favor of defendants.

Plaintiff appeals from the judgment and the order dissolving the injunction. Plaintiff, as a resident and taxpayer of the city of San Jose, seeks to maintain the action against the city and the other defendants—the mayor and common council—to enjoin them from executing a lease. The complaint alleges that there is within the county of Santa Clara, subject to the jurisdiction of San Jose, a tract of land of about four hundred acres, known as the "City Reservation," or "Alum Rock Park," and that the same is a public park, to the free use of which the plaintiff and the people of the city are entitled; that the defendants are about to, and will unless restrained, execute and deliver a lease to one Terry of two and one half acres of the said park for hotel purposes for a period of twenty-five years, said proposed lease being set out in an exhibit annexed to the complaint.

It is further alleged that the defendants have no power to execute the said lease; that such lease will deprive plaintiff and the residents of said city of the free use of the said park, destroy and injure the trees and shrubbery growing thereon, and mar the natural beauty thereof, to the great and irreparable injury of plaintiff and the residents of the city of San Jose.

The present charter of the city provides that a portion of the city park "may be leased for hotel purposes only, not exceeding two and one half acres, for a term of not more than twenty-five years, but no such lease shall in any manner restrict or interfere with the free use of the waters and grounds of the park by the public." (Charter of San Jose, sec. 1, subd. 19, Stats. 1897, p. 602.)

The contemplated lease is of two and one half acres and for the term authorized by the charter, and provides: ''The premises leased hereby, and the business conducted thereon, shall at all times be subject to such stipulations and restrictions' as may be prescribed by the park commissioners, and this lease shall not in any manner restrict or interfere with the free use of the waters or grounds of the park by the public.''

Therefore, it is plain that the present charter gives the authority to execute the lease. In fact, the appellant does not contend otherwise.

The main contention is, that the park was dedicated to the public solely for a public park, and that the city authorities cannot devote any portion thereof to other purposes. The cases cited and relied upon in support of the contention arose where the original title was conveyed by private parties for the use of a park or other named public use. For the purposes of this case, it may be conceded that where the title is in a. private party, and such private party conveys land to the public for a certain definite public purpose, it cannot be diverted to another and different purpose not connected with the original dedication. The title in such case remains in the original owner, subject to the public use. The public takes it in trust and for the public purpose designated in the instrument of conveyance. There may be cases where the public authorities have diverted or dedicated the property of the municipality for a public park or other public purpose under such circumstances that individuals have acquired rights with reference thereto that would entitle such individuals to insist that the city authorities should not be allowed to divert the property to other and independent purposes; but in this case the property was not dedicated nor conveyed by an individual to the public for the purposes of a park. The plaintiff does not claim to be the owner, nor to have acquired any rights with reference to the park other than such as is possessed by every taxpayer in the city.

It appears that on September 13, 1866, it was resolved by the mayor and common council that the committee on public buildings proceed at once to cause a survey of such parts of the lands on and in the vicinity of Penitentia Creek as they

may deem necessary for the purpose of being set apart for a public park.

In March, 1867, the present park was, by virtue of said resolution, surveyed by one Bowen, the county surveyor, and a plat and field-notes made. On March 13, 1872, the legislature passed an act entitled "An act to reincorporate the city of San Jose." (Stats. 1871-1872, p. 333.) Section 63 of this act provided that the tract of land surveyed by Bowen (being the present park) "be and the same is hereby declared a public park. . . . Provided, that said mayor and common council may lease the same for a term not exceeding ten years upon such terms and conditions as they may deem proper, but such lease shall not authorize or permit any use or disposition of said park or reservation as to prevent the free use thereof during the existence of such lease by the people of said city as a public park."

The said act took effect immediately. The acts of the city authorities, as thus approved by the legislature, constituted a dedication by the city to itself as a public park. No acceptance other than this was necessary. The dedication was complete upon the approval of the act. (*Hoadley* v. *San Francisco,* 50 Cal. 273.) Thus it is plain that the original dedication authorized the mayor and common council to lease all the park upon such terms and conditions as they might deem proper, the term of such lease not to exceed ten years. The act did not attempt to specify the purpose for which such lease might be executed, but left it wholly in the discretion of the mayor and common council. Thus the dedication was on the condition that the park or any portion of it might be leased.

On March 15, 1872, the legislature passed another act, entitled "An act to provide for the opening and improving of Santa Clara Avenue in the county of Santa Clara." (Stats. 1871-1872, p. 370.) This act created a board of commissioners, who were authorized to expend money and improve Santa Clara Avenue. It was therein provided that "Said land thus selected [the park] shall be designated by suitable monuments, and shall be and remain a public park for public uses forever, and shall be under the charge, control, and management of the board of commissioners hereby created."

Appellant contends that this latter act had the effect of making a dedication of the park, without any conditions as to leasing or any power to lease. We do not think such was the effect of the act. The tract of land had already been dedicated by the city authorities under the former act of March 13, 1872. The latter act could not dedicate that which had already been dedicated. It could, and did, place the management and control of the park in the board of commissioners. If appellant's argument be conceded, then it must also be conceded that the legislature could, after the dedication, change the conditions upon which the dedication was made from time to time. And this the legislature has done. Thus in March, 1874, the charter of the city was amended, and the provisions as to leasing retained in substance as in the original act of March 13, 1872, authorizing the city authorities to lease for ten years on such terms and conditions as they deem proper. (Stats. 1873-1874, p. 418.) A few days later the Santa Clara Avenue act of March 13, 1872, was amended, authorizing the board of commissioners to lease any portion of the park for the purpose of securing the erection of buildings for resort, refreshment, and bathing. (Stats. 1873-1874, p. 539.) On March 16, 1878, the charter was again amended, retaining the substance of the original provision in regard to leasing. (Stats. 1877-1878, p. 289.) On the last-named day another act was passed for the purpose of putting an end to the authority of the board of commissioners of Santa Clara Avenue. This act again placed the management of the park in the mayor and common council, and authorized them to lease the whole or any portion of the park upon such terms and for such periods, not exceeding ten years, as they might deem advisable. (Stats. 1877-1878, p. 290.) The charter was again amended in 1891, authorizing the mayor and common council to lease any portion of the park for a term not exceeding twenty years. (Stats. 1891, p. 97.) Finally the present charter, approved by concurrent resolution on March 5, 1897, expressly authorizes a lease ''for hotel purposes only, not exceeding two and one half acres, for the term of not more than twenty-five years.'' (Stats. 1897, p. 592.) Thus it is readily seen that every charter of the city, including that dedicating the park, up to the present time, has authorized

the leasing of the park or portions thereof. It therefore appears clearly that the contemplated lease was in the minds of the city authorities and of the legislature at the time the property was dedicated. Further, it does not clearly appear, in the absence of any power to lease in the original dedication, that the same parties who dedicated the land for a park might not agree to a use of a portion of it for hotel purposes. The charter was adopted by the city and by the legislature.

. It was said in the *Brooklyn Park Commissioners* v. *Armstrong,* 45 N. Y. 242:[1] "Where the property is taken, the owner paid its true value, and the title vested in the public, it owns the whole property, and not merely the use; and, though the particular use may be abandoned, the right to the property remains. The property is still held in trust for the public by the authorities. By legislative sanction it may be sold, be changed in its character from real to personalty, and the avails be devoted to general or special public purposes. . . . The legislature could discharge it from the trust to hold it for a park and empower it to sell. It has done so, and, so far as any express limitation in our state constitution is concerned, it had the power to do so."

In *Commissioners of Franklin County* v. *Lathrop,* 9 Kan. 463, it is said: "The conveyance once made, the trust is created. It can be destroyed only by the consent of the grantor of the trust and the beneficiary. It is beyond the reach of legislative power. But we are told that the grantors of this trust, by their subsequent conveyance, have conveyed all their remaining interests to the plaintiffs in error; that the public is the beneficiary, and that the legislature represents the public, so that we have here the consent of the grantor, the trustee, and the *cestui que trust.* This is probably true; and if this consent had been given before any private rights had been built up on this trust, it is difficult to see how this injunction could be sustained." It was, however, held in the latter case that, as the defendant had purchased after the property had been dedicated as a public square, and had made lasting and valuable improvements, which were enhanced by the square and would be diminished by a change, the trust could not be destroyed. The rule is discussed in Dillon on

[1] 6 Am. Rep. 70.

Municipal Corporations (4th ed., sec. 651), and it is there said: ''As between the municipality and the general public, the legislative power is in the absence of special constitutional restrictions supreme, and so it is in all cases where there are no private rights involved. If the municipal corporation holds the full title to the ground for public uses, without restriction, the legislature may, doubtless, direct and regulate the purposes for which the public may use it.''

But, further, we are not prepared to say that the public authorities in this case did not have the authority to make the contemplated lease under their general power to control and manage the park. It was some seven miles from the center of the city. It consisted of four hundred acres, only two and one half of which are to be leased. The leased premises were to be kept and maintained in first-class condition, and subject to the rules and regulations of the city authorities. Persons affected with certain diseases are not to be allowed as guests therein. The hotel is to be named ''The San Jose Mineral Springs,'' or such other name as the mayor and common council consent to. It is evident that the city authorities desire to add to the comfort and attractions of the park without expense to the city, and at the same time derive an income from the lease. It is not shown that the contemplated lease will in any way detract from the use of the park by the public. In *Gushee* v. *City of New York,* 42 App. Div. 37, 58 N. Y. Supp. 967, it was held that the department of public parks had the right to lease a building in Riverside Park on the Hudson for a period of years for restaurant purposes. The court said ''that in the control and management of the public parks of a great city it is perfectly proper to furnish not only such innocent amusements as may enhance the pleasure of those who resort to the parks, but such opportunities for rest and refreshment for themselves and their animals as may be required, will not be disputed. The doing of these things is no part of the public duty imposed upon municipal corporations as the agent of the state in the performance of its governmental functions, but rather a part of the business of the city, which it may not undertake in its private capacity, as the owner of the lands which have been set apart for park purposes. . . . Whether, in doing these things the authorities

shall act themselves, or whether they shall be performed by private persons under an agreement with the park authorities, must be left very largely to the discretion of those who have control of the parks. If, in their judgment, it shall seem better that the furnishing of refreshment shall be farmed out to some person for a consideration, subject to the regulation and control of the authorities, it cannot be said as a matter of law that such discretion is beyond their power.''

The supreme court of Missouri held in a late case (*State* v. *Schweickardt*, 109 Mo. 496) that, under the power given to the city authorities of the city of St. Louis to regulate all parks belonging to the city, the city authorities could make a contract authorizing the sale of refreshments in Forest Park, and give the lessee possession of certain buildings on the premises for such purpose. The court said: ''It seems, too, to be a matter of common knowledge that refreshments, both solid and liquid, refreshments of an intoxicating nature, are customarily served to the visitors of the great parks of this country, Central Park, New York; Fairmont Park, Philadelphia; and Golden Gate Park, San Francisco. On this basis of fact and of custom it cannot be regarded as any diversion of the legitimate uses of the park to have refreshments served in a manner contemplated by the ordinance and contract aforesaid. . . . And so long as the proprieties of life are observed, no one of the throng who visit such a locality has any grounds to insist that *his* method of conducting a park should be adopted instead of the plan deemed best by the regularly constituted authorities. Such intolerance, on whatever motive based, is at war with the theory and practice of our government and an enlightened civilization. Its voice should not prevail in a court of justice, and in this connection it should be constantly borne in mind that within the legislative sphere of their authority the discretion confided to municipal corporations is as proportionately wide as is a like discretion possessed by the government of the state, and as free from outside interference, and that discretion is not subject to judicial revision or reversal.''

Applying the above principles, we do not think the contemplated lease in excess of the powers of the city authorities. The park contains mineral springs. The proposed hotel is for

the use of the public, where those who desire may get food and rest. It is to be under the supervision of the city. It, if properly conducted, will add to the attractions of the park. It will be no expense, but a profit, to the city. Nor do we think the appellant is entitled to relief because the contemplated lease is for twenty-five years instead of the time provided by sections 711 and 718 of the Civil Code. Such lease, if subject to the said sections, would not be void, except as to the excess of the period. The appellant is not entitled to an injunction if the authorities have the power to lease as prescribed in the charter.

The judgment and order should be affirmed.

Chipman, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

Angellotti, J., Shaw, J., Van Dyke, J.