[Civ. No. 10226. Third Dist. Mar. 13, 1962.]

IVAR E. ANDERSON et al., Plaintiffs and Appellants, v. PACIFIC AVENUE INVESTMENT COMPANY, INC., et al., Defendants and Respondents; THEODORE NIEDWICK et al., Interveners and Appellants.

Richard B. Daley for Plaintiffs and Appellants.

Michael & Corren, Joseph D. Michael and Anthony Funke for Defendants and Respondents.

SCHOTTKY, J.—Certain property owners in a subdivision in the City of Stockton brought this action against the Pacific Avenue Investment Company, Inc., owners of a building housing a bowling alley, and the operators of the bowling alley to prohibit the defendants from operating the business and to compel the removal of the building housing the bowling alley from the land. Appellants also sought damages for an alleged nuisance and sought to establish an easement over the property of defendant Pacific Avenue Investment Company. Other property owners were permitted to intervene as plaintiffs. Judgment was in favor of the defendants. This appeal followed.

The only question presented to this court is the validity of certain restrictive covenants allegedly in force in the subdivision.

On August 13, 1946, Peter L. Sala and Dante Nomellini, the owners of the land, recorded a map of a subdivision called "Swain Oaks Manor." On October 4, 1946, before any lots were sold, Sala and Nomellini recorded a declaration and plan of restrictions of the subdivision. It was provided in the restrictions that the property which was later acquired by the defendant Pacific Avenue Investment Company was to be reserved for a community shopping center. On October 14,

1946, the first lot sold in the subdivision, Lot Number 181, was conveyed to Howard H. Mead and Ruth Ellen Mead, his wife. The deed was recorded the next day. The recorded instrument does not mention any restrictions. On November 4th the restrictions were again recorded. On November 29, 1946, the Meads purchased a second lot in the subdivision. Again the deed made no mention of any conditions or restrictions.

 On January 16, 1947, the original subdividers entered into an agreement with the Meads which reads as follows:

"Amendment to Conditions and Restrictions

"WHEREAS, SWAIN OAKS MANOR, a Co-Partnership, consisting of PETER L. SALA and DANTE NOMELLINI, of Stockton, California, is the owner of all of the lots shown upon the Map of SWAIN OAKS MANOR, which Map was recorded August 13, 1946 at 4:10 p. m. in Vol. 11, Page 115 of the Official Maps and Plats of San Joaquin County, California, except Lots one Hundred eighty (180) and one hundred eighty-one (181).

"AND WHEREAS, HOWARD H. MEAD and RUTH ELLEN MEAD, his wife, are the owners of said lots one hundred eighty (180) and one hundred eighty-one (181), as shown upon said Map of SWAIN OAKS MANOR, which Map was recorded August 13, 1946 at 4:10 p. m. in Vol. 11, Page 115 of the Official Maps and Plats of San Joaquin County, California.

"AND, WHEREAS, the said SWAIN OAKS MANOR, a Co-Partnership, did impose upon said lots the certain covenants, conditions and restrictions recorded October 4, 1946 in Vol. 1005 of Official Records, Page 398, and on November 4, 1946 in Vol. 1025 of Official Records, page 140.

"AND, WHEREAS, the above owners do hereby desire and agree that said conditions and restrictions shall be amended in so far as to the square foot area of dwelling houses to be erected in said tract.

"Now, THEREFORE, it is agreed that said condition and restrictions be amended so that the area of any dwelling house to be erected on said tract shall be not less than eight hundred fifty (850) square feet. All other provisions to remain unchanged."

This agreement was recorded on January 16, 1947. Thereafter the remaining lots in the subdivision were sold. None of the deeds introduced in evidence indicate that any restrictions or conditions were imposed by the deeds of conveyance.

It is clear since no restrictions appear in the original deeds

that if equitable servitudes were created they were only created, if at all, by the amended agreement executed between the subdividers and the Meads.

■ As stated in *Murry* v. *Lovell*, 132 Cal.App.2d 30, 32-34 [281 P.2d 316], quoting *Werner* v. *Graham*, 181 Cal. 174, 183-185 [183 P. 945]:

" 'It is undoubted that when the owner of a subdivided tract conveys the various parcels in the tract by deeds containing appropriate language imposing restrictions on each parcel as part of a general plan of restrictions common to all the parcels and designed for their mutual benefit, mutual equitable servitudes are thereby created in favor of each parcel as against all the others. . . . ■ In such a case the mutual servitudes spring into existence as between the *first parcel conveyed and the balance of the parcels at the time of the first conveyance.* As each conveyance follows, the burden and the benefit of the mutual restrictions imposed by preceding conveyances as between the particular parcel conveyed and those previously conveyed pass as an incident of the ownership of the parcel, and similar restrictions are created by the conveyance as between the lot conveyed and the lots still retained by the original owner. . . .

" ' . . . . . . . . .

" 'There is likewise authority to the contrary. . . .

" 'An analysis of such a case, however, leaves, we believe, no reasonable doubt as to which line of authorities is correct. ■ The intent of the common grantor—the original owner —is clear enough. He had a general plan of restrictions in mind. But it is not his intent that governs. It is the joint intent of himself and his grantees, and as between him and each of his grantees the instrument or instruments between them, in this case the deed, constitute the final and exclusive memorial of such intent. . . . Nor does it make any difference that, as claimed by the defendants, Marshall gave each grantee to understand, and each grantee did understand, that the restrictions were exacted as part of a general scheme. Such understanding was not incorporated in the deeds, and as we have said, the deeds in this case constitute the final and exclusive memorials of the understandings between the parties. *Any understanding not incorporated in them is wholly immaterial in the absence of a reformation. . . . This whole discussion may in fact be summed up in the simple statement that if the parties desire to create mutual rights in real property of the character of those claimed here they*

*must say so, and must say it in the only place it can be given legal effect, namely, in the written instruments exchanged between them which constitute the final expression of their understanding.'* (Italics added.) "

As stated in *Wing* v. *Forest Lawn Cemetery Assn.*, 15 Cal.2d 472 [101 P.2d 1099, 130 A.L.R. 120], at page 479: "The law is well settled in California, that the deed is the final and exclusive memorial of the intention and rights of the parties. (*Martin* v. *Holm*, 197 Cal. 733, 742 [242 P. 718]; *Werner* v. *Graham*, 181 Cal. 174, 185 [183 P. 945]; *Berryman* v. *Hotel Savoy Co.*, 160 Cal. 559, 566 [117 P. 677, 37 L.R.A. N.S. 5]; *McBride* v. *Freeman*, 191 Cal. 152, 156 [215 P. 678].)

Furthermore, any provisions of an instrument creating or claimed to create such a servitude will be strictly construed, any doubt being resolved in favor of the free use of the land. (*Werner* v. *Graham*, 181 Cal. 174, 181 [183 P. 945]; *Firth* v. *Marovich*, 160 Cal. 257 [116 P. 729, Ann.Cas. 1912D 1190]; *Berryman* v. *Hotel Savoy Co.*, 160 Cal. 559 [117 P. 677, 37 L.R.A. N.S. 5]; *Bresee* v. *Dunn*, 178 Cal. 96 [172 P. 387].) "

And as stated by this court in *King* v. *Snyder*, 189 Cal. App.2d 482 [11 Cal.Rptr. 328], at page 484: "Thus, '. . . if the parties desire to create mutual rights in real property of the character of those claimed here they must say so, and must say it in the only place where it can be given legal effect, namely, in the written instruments exchanged between them which constitute the final expression of their understanding.' (*Werner* v. *Graham*, 181 Cal. 174, 185 [183 P. 945].) Or stated otherwise: '. . . unless specifically stated to be for the benefit of the other lot owners, such covenants or restrictions are enforceable only as between the original parties to the deed, or their heirs or assigns. The deed involved herein fails to mention the other lot owners in any way and, therefore, the restrictions contained therein cannot be enforced by one lot owner against another.' (*Fees* v. *Williams*, 212 Cal. 688, 690 [300 P. 30].) "

It is also the rule the "Restrictions on the use of land will not be read into a restrictive covenant by implication. . . ." (*Hannula* v. *Hacienda Homes, Inc.*, 34 Cal.2d 442, 444 [211 P.2d 302, 19 A.L.R.2d 1268].)

When the agreement is examined in the light of the rules enunciated, it is evident that no equitable servitudes were created. The Meads, except by implication perhaps, did not agree to be bound by the restrictions. All that the Meads agreed to was that the restrictions as to building size be

reduced. In the absence of an express agreement by the Meads to be bound by the other restrictions no equitable servitudes were created by the amendment. To hold that equitable servitudes were created would violate the rules heretofore enunciated.

No other points require discussion.

The judgment is affirmed.

Peek, P. J., and Pierce, J., concurred.

The petition of plaintiffs and appellants for a hearing by the Supreme Court was denied May 9, 1962.