[Civ. No. 1111. Fifth Dist. Dec. 19, 1969.]

HAROLD HEINLY et al., Plaintiffs and Respondents, v.
ANDREW LOLLI, as Director, etc., et al., Defendants and Appellants.

**COUNSEL**

Thomas C. Lynch, Attorney General, and Paul M. Joseph, Deputy Attorney General, for Defendants and Appellants.

William A. White for Plaintiffs and Respondents.

## Opinion

**COAKLEY, J.**—Respondents Harold Heinly, Edward Sharkey, and The American Legion, Department of California, brought an action against Andrew Lolli, Director of the Department of General Services; James Johnson, Director of the Department of Veterans Affairs; the State of California; the California Veterans Board; and the Napa Valley Unified School District. The subject matter of this case is a lease to the school district of Building "C," together with an adjoining parking lot, located on, and constituting part of, the Veterans' Home of California at Yountville.

The complaint, containing three causes of action, seeks injunctive and declaratory relief. The judgment provides that: (1) the lease is null and void; (2) the state is forbidden to lease Veterans' Home property by a restriction in the deed through which the property was acquired by the state; (3) if authority to lease the property exists, such authority rests exclusively with the Department of Veterans Affairs and not with the State Director of General Services; (4) the school district is enjoined from using the leased premises; and (5) the defendant Johnson and the Department of Veterans Affairs are enjoined from "in any way allowing the use of the said Veterans Home property for any use that does not contribute directly to the use and enjoyment of that property by the Veterans in that home." That portion of the judgment enjoining the school district from using the property was stayed pending review on appeal. All defendants except the school district join in this appeal.

### Facts

The Home was acquired by the state in 1899 by deed from the Veterans Home Association, a corporation, for use as a home for United States soldiers, sailors and marines. None of the buildings acquired under the original deed exist today, all having been replaced by the state. The Home. located on a large parcel of property, includes a hospital, hospital annex. several residence domiciliaries, administration building, dining hall, recreation hall and outdoor facilities, and related improvements.

The lease in issue, dated May 8, 1967, and amended July 17, 1967, was negotiated on behalf of the state by the Department of Veterans Affairs. Each document was executed on behalf of the state by an assistant director of the Department of General Services, and bore the written "consent and approval" of the Department of Veterans Affairs by its director, appellant Johnson. The lease provides that the leased premises shall be used exclusively for the administrative purposes of the school district, and that the district is required to improve the parking area for the exclusive use of its employees. The lease further provides that (1) the school district shall maintain the leased premises, and (2) upon the request of

the state, the school district shall assist in the establishment of an educational program for the benefit of the members of the Home. The rental is $100 per month, and the term of the lease is five years. It is terminable by the state on 90 days' notice at any time that the "Home has need of any part or all of the demised premises for the housing of veterans who have applied for domiciliary care." The saving to the state in the maintenance of Building "C" is $2,000 per year.

The evidence establishes that the Home has three types of accomodations and services, viz, hospital care, nursing home care, and domiciliary care for men and women; there are waiting lists for admission to all facilities except the men's domiciliary section.

Respondents introduced evidence for the purpose of establishing (1) that the lack of occupants in three large men's dormitories was artificially created by the state's failure to make known the availability of such space; and (2) that Building "C" could be converted into a nursing care facility, thus, permitting acceptance of applicants on the waiting list for that type of care. There was also evidence that, at times, members of the Home had used a part of Building "C" to make poppies for sale on Veterans' Day. However, other space is available for this purpose. Our examination of the record discloses ample refutation by the state of respondents' contentions. Thus, it was established that Building "C" had been vacant since 1960, except for at first five, and since occupancy by the school district, two members of the Home who reside in Building "C" more or less as caretakers; that there is no waiting list for men's domiciliary care; that the trend of domiciliary membership in the Home has been steadily downward for nine years; that such downward trend likewise prevails for domiciliary care facilities for veterans in other states; that not only has Building "C" been substantially vacant for many years, but so, too, have Buildings "A" and "D"; that each such building will accomodate 202 men for a total of 606; that the men's dorms are not suitable for women, who are provided with private rooms; that the cost of converting Building "C" into a nursing care facility meeting standards prescribed by the Veterans Administration of the United States government is prohibitive; and that unsuccessful efforts have been made, including efforts made by respondents, to induce the Legislature to appropriate funds to create additional hospital and nursing care facilities at the Home.

### ISSUES

(1) Do respondents have legal capacity to maintain this action?

(2) Does the state have authority to make the lease for the use proposed?

(3) If the state has authority to lease Building "C," which agency or agencies have the responsibility for doing so?

## THE LAW

*Do Respondents Have Capacity to Sue?*

Class actions are authorized by Code of Civil Procedure section 382, which provides, in part, " . . . when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

In construing the statute in *Daar* v. *Yellow Cab Co.,* 67 Cal.2d 695, the court held at page 704 [63 Cal.Rptr. 724, 433 P.2d 732]: "Although the statute appears to speak in the alternative, it uniformly has been held that two requirements must be met in order to sustain any class action: (1) there must be an ascertainable class [citations]; and (2) there must be a well defined community of interest in the questions of law and fact involved affecting the parties to be represented [citations]."

In *Gogerty* v. *Coachella Valley Jr. College Dist.,* 57 Cal.2d 727, 730 [21 Cal.Rptr. 806, 371 P.2d 582], the court held: "A taxpayer may sue a governmental body in a representative capacity in cases involving fraud, collusion, ultra vires, or failure on the part of the governmental body to perform a duty specifically enjoined."

It is settled that declaratory relief may be a proper remedy against the state. (*Lord* v. *Garland,* 27 Cal.2d 840, 852 [168 P.2d 5].)

Appellants do not contend that an action in declaratory relief cannot be brought against the state. They contend only that such remedy is not appropriate in this case. We disagree.

The individual plaintiffs are identified in the complaint as resident taxpayers of this state, as honorably discharged veterans of the armed forces of the United States, and as officers, currently, of The American Legion, Department of California, chartered by Act of Congress. The complaint further avers that the plaintiff, The American Legion, is made up of honorably discharged veterans of the United States. It also avers that the action is brought "on behalf of . . . all veterans residing in the State, and veterans organizations." Finally, the complaint alleges that the lease of the Veterans' Home constitutes an ultra vires act on the part of the state and its agents.

Clearly, veterans of the armed forces of the United States are an ascertainable class, and since, by law (Mil. & Vet. Code, § 1012), the Home is maintained for the benefit of veterans who meet the qualifications prescribed for membership in the Home, veterans generally, including all respondents, have a community of interest in the issues of this case. Equally

clear is the fact that if authority for making the lease is lacking its execution constitutes an ultra vires act.

We hold, therefore, that respondents have the capacity to bring this action on behalf of veterans, generally, for the purpose of challenging an alleged ultra vires act of the state and its agents in a matter affecting their common interest.

## Does the State Have Authority to Make the Lease for the Use Proposed?

Respondents contend, and the trial court held, that the premises may not be used for any purpose "that does not contribute directly to the use and enjoyment of that property by the Veterans in that home."

This issue requires an analysis of the deed by which the state acquired the property, and of applicable statutes. In March 1897, and for approximately 15 years prior thereto, the Veterans' Home Association owned and operated the Home. In that year, legislation was adopted providing for the acceptance by the state of a conveyance of the Home by the association (Stats. 1897, ch. 101, p. 106). The statute is entitled "An Act to accept . . . the Veterans' Home . . . to make the same a state home for United States soldiers, sailors, and marines, and to provide for the government thereof by the State." The statute contains the following language on the subject of the use and purposes of the property to be conveyed:

"Section 1. The State of California accepts from the Veterans' Home Association, a private corporation, and for the purpose of a home for aged and indigent ex-soldiers, sailors, and marines of the United States . . . .

". . . . . . . . . . . . . .

"Sec. 2. Said property shall continue to be used as a home for aged and indigent United States ex-soldiers, sailors, and marines.

". . . . . . . . . . . . . .

"Sec. 4 . . . and all property held by said board shall be in trust for the State and for the use and benefit of said home."

On January 17, 1899, two years after enactment of the statute, the association executed its deed in favor of the state. On the subject of the use and purposes of the Home, the deed recited that (1) the association was holding and maintaining the same for "the support, maintenance and well-being of aged and infirm United States ex Soldiers, Sailors and Marines . . ."; (2) and, "it being deemed necessary for the . . . continuance of its usefulness as a home . . ."; (3) and the state "having by the act of its Legislature . . . duly consented to accept . . . for the purposes afore-

said a conveyance of said property . . . "; (4) the premises were to be held for "the uses aforesaid . . . forever."

An acceptance on behalf of the state signed by the Governor and the Attorney General was appended to the deed in these words:

"The foregoing deed is hereby accepted in behalf of the State of California pursuant to the provisions of Section Fifteen of the Act entitled 'An act to accept from the Veterans' Home Association the conveyance of, and to vest the title in the State of California, to the tract of land in Napa County known as the Veterans' Home, with the improvements and furnishings therein, to make the same a State Home for United States Soldiers, Sailors and Marines, and to provide for the government thereof by the State' approved March 11, 1897."

Patently, the deed and the statute must be read and construed together. (See *Wing* v. *Forest Lawn Cemetery Assn.*, 15 Cal.2d 472 [101 P.2d 1099, 130 A.L.R. 120].) If there be conflict, the statute constituting the sole authority by which the state accepted the property, and which is incorporated in the deed by reference, must control. We find no language in either the statute or the deed expressly prohibiting the use of a portion of the premises for purposes other than those directly benefiting veterans. Absent, also, are restrictive words frequently used in such deeds, e.g., "for the exclusive use of . . . ." The prohibition, if it exists, must be found by implication. We fail to find such implied prohibition in either the statute or the deed. It is extremely doubtful that the Legislature intended to bind the state to maintain a facility of this kind "forever" regardless of changed conditions. Query: Could it have been the intent of the Legislature that the state would be required to maintain these extensive facilities if wars became so infrequent that there were no veterans to occupy the Home? We think not. (See *Wattson* v. *Eldridge,* 207 Cal. 314 [278 P. 236], in which the court held that a dedication by a private owner of canals and waterways to the City of Venice for use "solely and only for permanent waterways, and canals, free to the public forever" did not prohibit the city from converting the canals and waterways into surface streets and highways.) To our way of thinking, a commitment in accordance with respondents' theory, and the court's ruling, would require words and language so clear as to be beyond reasonable doubt. Certainly, courts should not attribute such an intention to the Legislature by implication.

■ "Restrictions on the use of land will not be read into a restrictive covenant by implication . . . ." (*Hannula* v. *Hacienda Homes, Inc.,* 34 Cal.2d 442, 444 [211 P.2d 302, 19 A.L.R.2d 1268]; *Anderson* v. *Pacific Ave. Inv. Co.,* 201 Cal.App.2d 260, 264 [19 Cal.Rptr. 829].) Restrictive covenants are to be strictly construed against limitations upon the free use of property. (*Wing* v. *Forest Lawn Cemetery Assn., supra,* 15 Cal.2d 472.)

[W]here subject to more than one interpretation, that construction consonant with the unencumbered use of the property will be adopted . . . ." (*Smith* v. *North,* 244 Cal.App.2d 245, 248 [53 Cal.Rptr. 94]; see *Kent* v. *Koch,* 166 Cal.App.2d 579, 585 [333 P.2d 411].)

To meet and overcome the rule of the above cited cases, respondents cite cases which state the general rule to be that deeds by individuals dedicating land for public purposes are more strictly construed than deeds between private individuals containing restrictive provisions; also, such deeds are more strictly construed than dedications made by public authorities of lands purchased or condemned by such authorities. All of the cases cited by respondents involved land dedicated or set apart for park or public plaza purposes. All are clearly distinguishable from our case. In each of the cited cases wherein the court enjoined construction of proposed buildings or roads on or through public parks and plazas, there was no evidence of lack of use of the park or plaza by the public. On the contrary, each was located in a growing city or metropolitan area where the demand for parks and plazas was clearly indicated. Thus, in enjoining construction of a public office building, including a jail, on a public plaza, the court in *Kelly* v. *Town of Hayward,* 192 Cal. 242, 250 [219 P. 749], observed that: "should the Town of Hayward become a city, as it no doubt will, its need of parks and open space will become more and more apparent with increasing population, . . ." In some of the cases relied on by respondents, the deed or dedication by the public authority recited that the park was to be used exclusively for park purposes.

In other cases cited by respondents, the court refused to enjoin the construction of proposed buildings in public parks.[1] Thus, in *Spires* v. *City of Los Angeles,* 150 Cal. 64 [87 P. 1026, 11 Ann.Cas. 465], the question was whether the city could build a building on land which it had dedicated and used as a public park. The court held that the city could build a building limited to use as a library, but not for use as offices for the board of education. We note from the opinion that the park was located in the heart of the city on a small parcel of land, 330 feet by 600 feet.

In *Harter* v. *City of San Jose,* 141 Cal. 659, 665 [75 P. 344], the city proposed to lease to a private party for the purpose of constructing and operating a hotel, two and one-half acres of a 400-acre tract dedicated and used by the city as a municipal park. Appellant, as a resident and taxpayer of the city,

[1] *Wiley* v. *City of Berkeley,* 136 Cal.App.2d 10 [288 P.2d 123], is not in point, the court holding that it was strictly a municipal matter under the city charter. Parenthetically, however, the court refused to enjoin the city from constructing a fire house upon land which it had condemned expressly for park purposes, and upon which it had created and maintained a public park.

sought to enjoin execution of the lease. The Supreme Court, in holding that the lease was not in excess of the city's power, observed: "It is evident that the city authorities desire to add to the comfort and attractions of the park without expense to the city, and at the same time derive an income from the lease. It is not shown that the contemplated lease will in any way detract from the use of the park by the public."

In *Slavich* v. *Hamilton,* 201 Cal. 299 [257 P. 60], private donors had deeded land to the City of Oakland, which, in turn, dedicated and maintained it as a park. The city leased a portion of the land to the County of Alameda for the purpose of erecting thereon a memorial building to be used primarily as a meeting place for veterans' organizations. The acting chairman of the board of supervisors of the county refused to sign the lease. The court observed at page 302 that the respondent "relies upon the well-settled principle of law that land which has been dedicated as a public park must be used in conformity with the terms of the dedication, and it is without the power of a municipality to divert or withdraw the land from use for park purposes." But the court then stated that the real question was whether the purported use was consistent or inconsistent with park purposes. In answer thereto it held at page 309 that: "[T]he erection of the Veterans' Memorial Hall, as here proposed, will not interfere with the enjoyment by the community in general of Adams Park, and will not be such a diversion of the property from its use for park purposes as to amount to an invasion of the settled principles of law relied on by the respondent." Similarly, in our case, the real question is whether, under the particular circumstances, the proposed use by the school district is compatible or incompatible with the purposes of the Home.

█ Clearly, the purpose of the transaction exemplified by the statute, the deed, and the state's acceptance of the deed was to maintain a *Home* for veterans, who in the words of the statute are "aged and indigent," and in the words of the deed are "aged and infirm." We find it unnecessary to become involved in semantics, as have the parties, over the significance of the phrases "aged and indigent," on the one hand, and "aged and infirm," on the other. In that connection, respondents' argument that, because there is a waiting list for hospital care, the state is obligated to renovate Building "C" for use as a hospital or nursing care facility, regardless of feasibility and expense, is without merit. Neither the statute nor the deed imposes on the state any obligation to provide a home for *all* aged, indigent and infirm veterans, without limitation as to number. More particularly, no obligation is imposed to provide hospital care as distinguished from rest home or domiciliary care. On the contrary, section 12 of the act, *supra,* authorizes the governing board of the Home to make such regulations governing admissions as it deems in the best interests of the Home.

The evidence is undisputed that the state is maintaining very large and comprehensive facilities at the Home. Total occupancy at the time of the trial was 1,552 veterans, 419 of whom were hospital patients. It is undisputed that Building "C," as well as other domiciliary buildings capable of housing 600 veterans, have not been used for many years, and there are no indications that they will be needed for that purpose in the near future, if ever; that the lease may be terminated by the state on 90 days' notice if the Home needs the leased premises to house veterans who have applied for domiciliary care; and that the state is relieved of maintaining the building at an expense of $2,000 per year, and receives $1,200 per year in rent. While income to the state will not justify use by the school district, if such is forbidden by the statute and the deed, absent such prohibition, it may be considered along with other factors in resolving the issue of whether the lease was contrary to the purposes of the Home.

One such factor to be considered is the provision of the lease requiring the school district to assist in the establishment of an educational program for the benefit of the members of the Home. Respondents make light of the provision. Appellants defend it. There was no finding as to whether that provision of the lease did or did not constitute a benefit to the Home and to its members. The evidence is clear that it was not a major consideration in making the lease; however, in this age of growing emphasis on, and participation by, retired persons and others in adult and continuing education programs, it cannot be said that the establishment of such a program at the Home would not be for the benefit and enjoyment of Home members.

We hold, therefore, that under the circumstances of this case, use of Building "C" as provided in the lease is not prohibited, expressly or impliedly, by the statute or the deed, and is not incompatible with the purposes of the Home as set forth in the statute and the deed. (See *Slavich* v. *Hamilton, supra,* 201 Cal. 299, 307; *Harter* v. *City of San Jose, supra,* 141 Cal. 659, 665.)

*Which State Agency has Authority to Enter Into the Lease?*

The lease was executed on behalf of the state by an assistant director of the Department of General Services. On the same page, immediately opposite the assistant director's signature, appears these words: "Consent and approval is hereby given to the above Lease. DEPARTMENT OF VETERANS AFFAIRS by J. E. Johnson." Respondents contend, and the court held, that the Department of General Services has no authority to lease Home property; that any authority to lease rests exclusively in the Department of Veterans Affairs, pursuant to policies adopted by the California Veterans Board, and the direction of the Director of Veterans Affairs. Their point is

predicated upon Military and Veterans Code section 1014, which reads: "The home shall be under the management and control of the department and, subject to the policies adopted by the California Veterans Board and the direction of the Director of Veterans Affairs, shall be administered by the Commandant, Veterans' Home of California, known as the Manager of the Division of Veterans Homes."

The record discloses (1) that the California Veterans Board took no position, i.e., did not adopt a policy on the leasing of Building "C," though advised that such a lease was under consideration; and (2) that the negotiations were actually conducted by the Department of Veterans Affairs, whose director signed his written consent to the lease. The director testified that the reason the lease was not executed, rather than consented to by him as director of the department, is because the law vested the authority to lease the property in the Director of General Services, subject to the consent of the Department of Veterans Affairs.

Appellants contend that the authority to lease is vested in the Director of General Services by virtue of Government Code section 14670, which reads: "With the consent of the state agency concerned, the director may: (a) Let for a period of not to exceed five years, any real or personal property which belongs to the state, the letting of which is not expressly prohibited by law, if he deems such letting is in the best interests of the state. (b) Sublet any real or personal property leased by the state, the subletting of which is not expressly prohibited by law, if he deems such subletting is in the best interests of the state."

It is appellants' position that Government Code section 14670 expresses state policy to place authority and control over the leasing of all state property, not otherwise specifically exempted, in the hands of the Director of General Services, subject only to the consent of the state agency directly concerned, in this case the Department of Veterans Affairs by virtue of Military and Veterans Code section 1014, *supra*.

Section 121 of 45 California Jurisprudence, second edition, page 629-630, states: "Statutes on the same subject matter must be construed together in the light of each other, so as to harmonize them if possible, although they were passed at different times, and although one deals specifically and in greater detail with the subject than does the other. Even where in some particulars the provisions are apparently in conflict, the seeming inconsistency should be reconciled if possible."

In *Stafford* v. *Realty Bond Service Corp.,* 39 Cal.2d 797, 805 [249 P.2d 241], we find this succinct statement of the rule: "Rather every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect."

■ Applying the rule to the two statutes under consideration, we have no difficulty giving effect to both. The Mititary and Veterans Code section 1014 deals primarily with the operation of the Home as such. It is silent on the subject of leasing the premises. Government Code section 14670, on the other hand, deals specifically and exclusively with leasing of state property. It contains no exceptions. Exceptions, if any, must be found in the statutes specifically conferring authority to lease upon the particular agency. The Department of General Services was duly created by act of the Legislature in 1965 (Gov. Code, § 14600 et seq.) The legislative reason and purpose for such a department is expressed in section 14600: "The Legislature hereby declares that a centralization of business management functions and services of state government is necessary to take advantage of specialized techniques and skills, provide uniform management practices, and to insure a continuing high level of efficiency and economy." Section 14670, *supra,* vesting authority to lease state property in the Director of General Services implements the legislative policy declared in section 14600. To declare that authority to lease Home premises is vested in the Department of Veterans Affairs, as did the trial court, is to disregard the clear purpose and policy expressed in the Government Code section 14600, and fails to recognize and apply the rule that statutes must be read and construed so as to harmonize them if possible.

We hold, therefore, that authority to lease Home property is vested in the Director of General Services, acting with the consent of the Department of Veterans Affairs.

No useful purpose will be served by a retrial of this case. The facts are not in dispute. Questions of law, only, are involved. What were denominated as findings by the trial court were, in fact, conclusions of law. Accordingly, the judgment is reversed, and the trial court is directed to enter judgment in accordance herewith. (Code Civ. Proc., § 43; *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 440 [296 P.2d 801, 57 A.L.R.2d 914].)

Stone, P. J., concurred.

A petition for a rehearing was denied January 12, 1970, and respondents' petition for a hearing by the Supreme Court was denied February 13, 1970.