[Civ. No. 1935. Fifth Dist. July 18, 1975.]

## TEHACHAPI-CUMMINGS COUNTY WATER DISTRICT,
Plaintiff and Respondent, v.
FRANK ARMSTRONG et al., Defendants and Respondents;
THE STATE OF CALIFORNIA et al., Defendants and Appellants.

COUNSEL

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Douglas B. Noble and Jane C. Goichman, Deputy Attorneys General, for Defendants and Appellants.

Martin E. Whelan, Jr., for Plaintiff and Respondent.

Borton, Petrini, Conron, Wetteroth, Hitchcock, Werdel & Kuhs, William C. Kuhs, Conron, Heard & James, Calvin H. Conron, Jr., Holt & Taylor, Don Holt, Jr., Kirtland & Packard, Harold J. Hunter, Jr., Siemon & Patterson and Robert D. Patterson, Jr., for Defendants and Respondents.

OPINION

FRANSON, J.—

STATEMENT OF THE CASE

This action was initiated by respondent Tehachapi-Cummings County Water District,[1] in October 1966, seeking an adjudication of the underground water rights in Cummings Basin and an injunction against increasing extractions or diversions of the water pending the lawsuit, a temporary injunction reducing the collective extractions of water to the safe yield, and a permanent injunction to restrict future extractions of water in accordance with the priorities and rights to be determined by the court. It was alleged that the ground water annually extracted by the defendant overlying owners of land in the basin amounted to substantially all of the water extracted from the basin and that the defendants owned substantially all of the rights to pump water from the basin.

The appellant State of California filed an answer on September 27, 1967, alleging that since 1930 it had pumped water from the basin in a reasonable and beneficial manner as needed for the domestic, industrial and irrigation uses of the Tehachapi prison situated at Cummings Valley; that by reason of such governmental use, appellant could not be sued as it had not consented to be sued nor had it waived its sovereign immunity. It further alleged that its water rights were paramount to the claimed rights of the other defendants to pump water from the basin.

In its pretrial statement filed on June 25, 1970, respondent district alleged that during each water year from 1949 to the commencement of

[1]The district is a public entity formed under the County Water District Law. (Wat. Code, § 30000 et seq.) Although it claims no water rights in Cummings Basin it has statutory authority to pursue this action (*Water District* v. *Stevens*, 206 Cal. 400, 406-410 [274 P. 538]. The protection and conservation of underground water supplies for future as well as present use are primary functions of a water district. (*Atchison etc. Ry. Co.* v. *Kings Co. Water Dist.*, 47 Cal.2d 140, 146-147 [302 P.2d 1].)

the action, there had been an annual overdraft[2] upon the basin with an increasing condition of accumulated overdraft, that the continuing overdraft resulted in a lower water level with progressive deepening of wells and increased costs of pumping. It was further alleged that all extractions of water from the basin from 1949 to the commencement of the suit were open, notorious, adverse, hostile, under claim of right, and uninterrupted as to all of the other parties to the suit. It was alleged that the court should adopt a physical solution and restrict pumping by the parties to their respective shares of the safe yield[3] of the basin which was alleged to be 4,500 acre-feet per year. The pretrial statement alleged that the respondent district should be appointed watermaster to administer the provisions of the judgment and that the court should reserve continuing jurisdiction of the action.

On March 1, 1971, respondent amended its pretrial statement to allege that recent hydrological data indicated that the safe yield of 4,500 acre-feet per year was too high; notwithstanding this downward modification the data also indicated that water extractions for the preceding year were not in excess of safe yield so that there was no immediate need for pumping restrictions in the basin. However, it was alleged that the history of water production in the basin and the advent of subdivisions in the area necessitated that the export of water be enjoined, rights adjudicated and a watermaster appointed.[4]

Numerous defendants concurred in the respondent's pretrial statement. Parties who failed to file pretrial statements were deemed to have concurred in respondent's pretrial statement. Various other parties arrived at stipulations with respondent so that by the end of the trial appellant and respondent district were the only parties represented by counsel in court.

Trial was held June 14-22, 1971. A notice of intended decision was filed on August 23, 1971, and findings of fact, conclusions of law and the judgment were filed on March 6, 1972. Only appellant has appealed the judgment.

---

[2] "Overdraft" results when more water is extracted from the basin than is naturally replenished.

[3] Natural "safe yield" is the maximum quantity of ground water, not in excess of the long-term, average, natural replenishment (e.g., rainfall and runoff), which may be extracted annually without eventual depletion of the basin.

[4] All parties, including appellant, stipulated to an injunction prohibiting the export of water from the basin and the appointment of respondent as watermaster to enforce the injunction.

FACTS

Cummings Valley, site of the Cummings Basin, is located in Kern County west of Tehachapi Valley and the town of Tehachapi. The valley is about six miles long and two to four miles wide. Other than about 1,720 acres owned by appellant, the land is devoted to private agriculture. From 1951 to 1961, about 2,000 acres were irrigated, but this dropped to about 1,500 acres in the period 1961 to 1967.

The basin is composed predominantly of alluvial deposits about 450 feet thick at the deepest part. The alluvium feathers out in all directions toward the low-permeable rocks which surround the basin. The area within the alluvial boundary of the basin is about 8,500 acres. The main source of underground water is rainwater runoff from the surrounding mountains that flows onto the valley floor and percolates into the alluvium. At the time of trial, no water was imported into the valley.

The land on which appellant's prison facility is located was acquired by appellant in 1930 for a women's prison. The prison was in operation for about 20 years, when it was closed in 1952 because of earthquake damage. It was reopened in 1955 as a branch of the California Institution for Men.

At the time of trial only about 50 of appellant's 1,720 acres was devoted to prison use. For many years prior to 1955, appellant had leased out approximately 700 acres for farming. After 1955, this acreage was used by appellant for a farming program for prisoners; however, except for about 40 acres used as an experimental seed plot, the program was abandoned later. Appellant's pumping of water steadily increased over the years so that by 1970 it was pumping approximately 565 acre-feet per year for use on its land.

The trial court made the following pertinent findings: During each water year from 1949-1950 through 1964-1965 there was an overdraft on the basin as a result of the beneficial extractions of water in excess of safe yield. The continued overdraft resulted in a deepening of wells, abandonment of wells, an increase in the cost of pumping water, and a contraction of the watered, alluvial areas of the basin, all of which had an adverse effect on the basin as a source of water for beneficial uses and resulted in substantial damage to those that were entitled to extract water.

The trial court also found that all extractions of water from the 1949-1950 water year to the commencement of the action had been open, adverse, uninterrupted, and under claim of right; the overdraft was at all times a matter of public knowledge to all parties.

The natural safe yield was found to be 4,090 acre-feet per year, but because the present level of pumping was less than the safe yield, there was no need for an injunction restricting pumping. However, the court found that from the 1964-1965 water year to the time of the trial in 1971, the water levels in the basin remained fairly stable because of a decrease in pumping caused by the filing of the lawsuit and by a reduction in irrigated crops due to a decline in the agricultural economy of the area. The stabilization, however, had not remedied the overdraft which remained substantially as it existed at the end of the 1964-1965 water year. It found that a slight increase in irrigated crops and acreage would cause a resumption of the annual overdraft resulting in additional damage to the basin and to those entitled to extract water from it.

In the judgment, the trial court declared the water rights of the parties in terms of acre-feet per year. The appellant was found to have a right to extract 308 acre-feet per year. Because a slight increase in irrigated crops or acreage again would result in an annual overdraft, the court retained continuing jurisdiction and appointed respondent watermaster to monitor the ground-water production in the basin.

### "JUSTICIABILITY" TO ADJUDICATE WATER RIGHTS

Appellant contends that because the basin was not in a condition of annual overdraft in the water year preceding the filing of the action and the four years before trial the court had no power to declare and adjudicate the rights of the parties. Code of Civil Procedure section 1060 requires that there be an "actual controversy" relating to the legal rights and duties of the parties. ■ Whether justiciability exists in a jurisdictional sense in a declaratory relief action rests within the sound discretion of the trial court. (See *California Water & Telephone Co.* v. *County of Los Angeles*, 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618]; 2 Witkin, Cal. Procedure (2d ed.) Actions, § 38, pp. 909-910.)

■ The right of overlying owners to a judgment declaring their water rights and protecting them in the *prospective* beneficial use is clear even though substantial present damage is not shown. (*Tulare Dist.* v. *Lindsay-Strathmore Dist.*, 3 Cal.2d 489, 525, 529-530 [45 P.2d 972];

Hutchins, The Cal. Law of Water Rights, pp. 498-500; 1 Rogers & Nichols, Water for Cal., § 405, pp. 549-550.)

Appellant wrongly equates "annual overdraft" with "actual controversy." ■ Although an annual overdraft may not have occurred in the several years before trial, there had been a continuing overdraft of the basin during the 15-year period 1950 through 1965. As a consequence, wells were deepened, some had to be abandoned, the cost of pumping water increased throughout the basin, and the peripheral, watered, alluvial areas underwent a contraction, all of which resulted in injury to those entitled to extract the water. Under these facts, the present and prospective injury to the overlying owners was of sufficient magnitude to justify the exercise of the court's jurisdiction.[5]

## SOVEREIGN IMMUNITY

■ Appellant's contention that it is exempt from suit under the doctrine of sovereign immunity similarly is without merit. Former article XX, section 6 (now art. III, § 5) of the California Constitution provides that "[s]uits may be brought against the state in such manner and in such courts as shall be directed by law." This provision provides for legislative consent to suit. (*Muskopf* v. *Corning Hospital Dist.,* 55 Cal.2d 211, 218 [11 Cal.Rptr. 89, 359 P.2d 457].)

Government Code section 814 states that nothing in the Tort Claims Act affects the right to obtain relief other than money or damages against a public entity.

Commenting on section 814, Van Alstyne states: "The principal thrust of the immunity doctrine in California has thus been to protect public entities against unwarranted judgments for damages. Nonmonetary remedies have ordinarily remained open to the citizen. For example, he may enjoin a public entity from constructing a facility that will be a nuisance [citation] or will otherwise violate his rights [citation] . . . To the extent that substantive immunities are not infringed, declaratory relief is readily available for settling controversies between private persons and public entities . . . ." (Cal. Government Tort Liability (Cont. Ed. Bar 1964) § 1.6, pp. 8-9.)

---

[5]Because water rights are a species of real property the action may also be characterized as a quiet title action to adjudicate conflicting claims to water under Code of Civil Procedure section 738. (See *Merritt* v. *City of Los Angeles,* 162 Cal. 47, 50-51 [120 P. 1064]; *Stone* v. *Imperial Water Co.,* 173 Cal. 39, 43 [159 P. 164].)

General statutory provisions giving remedies to claimants but not expressly excluding governmental entities have been held .to provide remedies against them. (*Flournoy* v. *State of California,* 57 Cal.2d 497 [20 Cal.Rptr. 627, 370 P.2d 331]; *Lord* v. *Garland,* 27 Cal.2d 840, 852 [168 P.2d 5]; *Yuba River Power Co.* v. *Nevada Irr. Dist.,* 207 Cal. 521 [279 P. 128]; *Merritt* v. *City of Los Angeles, supra,* 162 Cal. 47 [quiet title of water rights]; see also Cal. Government Tort Liability (Cont. Ed. Bar) §§ 5.11 and 5.13.) ■ The declaratory relief statute (Code Civ. Proc., §˙1060) comes within the rule that general statutory language is applicable to the state absent legislative intent to the contrary. (*Lord* v. *Garland, supra,* 27 Cal.2d 840, 852; *Heinly* v. *Lolli,* 2 Cal.App.3d 904, 909 [82 Cal.Rptr. 914].)

■ Furthermore, the application of the theory of sovereign immunity to exempt appellant from suit would be contrary to the reasonable and beneficial use limitation of California Constitution article XIV, section 3. Although we reverse the judgment insofar as it declares that the overlying owners in the basin have acquired prescriptive rights to water against appellant, nonetheless appellant's rights, while correlative and equal to the other overlying owners, are subject to the constitutional limitation. (See *City of Los Angeles* v. *City of San Fernando,* 14 Cal.3d 199, 272-273 [123 Cal.Rptr. 1, 537 P.2d 1251].) ■ Simply put, appellant is subject to suit to prevent a waste of water.

### INAPPLICABILITY OF THE PRESCRIPTIVE RIGHTS DOCTRINE

■ The judgment must be reversed insofar as it declares that appellant is limited to pumping 308 acre-feet per year for use on its land within the basin. The trial court erred in applying the mutual prescription doctrine articulated in *City of Pasadena* v. *City of Alhambra* (33 Cal.2d 908, 928-933 [207 P.2d 17]) to quantify the water rights of the parties on the basis of past use rather than current, reasonable and beneficial need.

All of the parties to the action are overlying owners and all of the water pumped by these owners insofar as pertinent to the judgment is for overlying purposes; there are no appropriators of water involved in the action.[6] *Pasadena* v. *Alhambra, supra,* and the other underground basin

---

[6]Appropriation is the use of water for nonoverlying purposes such as exportation to lands outside the basin or for municipal use within the basin. (*Pasadena* v. *Alhambra, supra,* 33 Cal.2d 908, 925.) Appellant's pumping of water is for an overlying purpose as

cases upon which the trial court relied in imposing a prescriptive rights solution involved controversies between overlying owners and appropriators of water for distant use outside the basin or for public service within the basin. These cases hold that an appropriative taking of water which is not surplus is wrongful and may ripen into a prescriptive right against overlying owners and prior appropriators. Without appropriation, however, there is no paramount right which can be prescribed against.

■ An overlying water right is analogous to that of a riparian owner's right in a stream; it is the right to take water from the ground underneath the land for use on the land. The right is based on the ownership of the land and is appurtenant thereto. (See *Pasadena* v. *Alhambra, supra,* 33 Cal.2d at p. 925.) As between overlying owners, the rights, like those of riparians, are correlative, i.e., they are mutual and reciprocal. This means that each has a common right to take all that he can beneficially use on his land if the quantity is sufficient; if the quantity is insufficient, each is limited to his proportionate fair share of the total amount available based upon his reasonable need. (*Burr* v. *Maclay Rancho Water Co.,* 154 Cal. 428, 434-435 [98 P. 260]; *Katz* v. *Walkinshaw,* 141 Cal. 116 [70 P. 663, 74 P. 766]; *Pasadena* v. *Alhambra, supra,* 33 Cal.2d at p. 926; *California Water Service Co.* v. *Edward Sidebotham & Son,* 224 Cal.App.2d 715, 725 [37 Cal.Rptr. 1]; Hutchins, The Cal. Law of Water Rights, pp. 507-508.) The proportionate share of each owner is predicated not on his past use over a specified period of time, nor on the time he commenced pumping, but solely on his current reasonable and beneficial need for water. (Cal. Const., art. XIV, § 3; *Katz* v. *Walkinshaw, supra,* 141 Cal. 116; *Peabody* v. *City of Vallejo,* 2 Cal.2d 351 [40 P.2d 486]; *Burr* v. *Maclay Rancho Water Co., supra,* 160 Cal. 268, 281-282 [116 P. 715]; *Hudson* v. *Dailey,* 156 Cal. 617, 628-629 [105 P. 748]; Hutchins, The Cal. Law of Water Rights, pp. 437-438; 51 Cal.Jur.2d, Waters, § 400, p. 870.)

■ By analogy to riparian rights, where there is insufficient water for the current reasonable needs of all the overlying owners, many factors are to be considered in determining each owner's proportionate share: the amount of water available, the extent of ownership in the basin, the nature of the projected use—if for agriculture, the area sought to be

---

the prison is a beneficial use of the land. By analogy to riparian rights, overlying rights may be exercised "for the purposes for which such lands are, or may be made adaptable." (See Cal. Const., art. XIV, § 3; *United States* v. *Fallbrook Public Utility District,* 165 F.Supp. 806, 824-825, where use of water for military reservation held to be a beneficial riparian use.

irrigated, the character of the soil, the practicability of irrigation, i.e., the expense thereof, the comparative profit of the different crops which could be made of the water on the land—all these and many other considerations must enter into the solution of the problem. (See *Half Moon Bay Land Co.* v. *Cowell,* 173 Cal. 543, 549-550 [106 P. 675]; *Rancho Santa Margarita* v. *Vail,* 11 Cal.2d 501 [81 P.2d 533]; 1 Rogers & Nichols, Water for Cal., § 444, p. 582.) "[The] objection that this rule of correlative rights will throw upon the court a duty of impossible performance, that of apportioning an insufficient supply of water among a large number of users, is largely conjectural . . . [T]he difficulty in its application in extreme cases is not a sufficient reason for rejecting it . . . ." (*Katz* v. *Walkinshaw, supra,* 141 Cal. 116, 136; see also *Peabody* v. *City of Vallejo, supra,* 2 Cal.2d 351, 375.)

We recognize that the responsibility for urging the imposition of a prescriptive rights solution in this case rests with respondent district. In its pretrial statement of June 25, 1970, it stated: "Plaintiff's theory of the case is predicated on . . . *Pasadena* v. *Alhambra,*" and it then proposed findings of fact and a judgment quantifying the "base water right" of each of the defendants at a specified number of acre-feet per year, based on the highest continuous extraction of water by each defendant over a five-consecutive-year period after the commencement of the overdraft. Thereafter, all defendants other than appellant either stipulated to the proposed findings or failed to appear at the trial. Because it is apparent that the stipulations and defaults were made under the misconception that all of the defendants' water rights eventually would be quantified on a mutually prescriptive basis or none would be, we believe the trial court on remand should reexamine the rights of all defendants in accordance with this opinion and determine whether any party who so desires should be relieved from his stipulation or default.

### RETENTION OF JURISDICTION BY THE TRIAL COURT AND APPOINTMENT OF WATERMASTER

Although appellant's water rights may not be quantified to a specified acre-feet per year, it is clear that its right to pump water from the basin is subject to the reasonable and beneficial use limitation of the California Constitution. (*City of Los Angeles* v. *City of San Fernando, supra,* 14 Cal.3d at pp. 272-273.) For this reason, the trial court's reservation of jurisdiction over appellant and the other parties to settle future disputes concerning their pumping rights in the basin, and the appointment of a watermaster to monitor the amount of future pumping

is proper. As stated in *City of Los Angeles* v. *City of San Fernando, supra,* at page 265: ". . . the principle of continuing administration of competing rights to ground basin water through appointment of a watermaster and retention of jurisdiction should be distinguished from the rules by which the limited supply of water is apportioned among the parties. Thus, a determination that the competing rights are all other than prescriptive in nature would not necessarily preclude the exercise of such administration and jurisdiction to conserve and apportion the water in the overdrawn basin. (See Wat. Code, §§ 4025-4032 (watermaster service areas); *Fleming* v. *Bennett* (1941) 18 Cal.2d 518 [116 P.2d 442].)"

The judgment is reversed insofar as it declares that appellant is limited to pumping 308-acre feet per year for use on its land within the basin. The action is remanded to the trial court with directions to declare that appellant's right to pump water from the Cummings Basin is correlative and equal to the water rights of the other overlying owners in the basin, and to make further inquiry and adjudication of the water rights of the other overlying owners in the basin as are consistent with the views expressed in this opinion. In all other respects the judgment is affirmed.

Gargano, Acting P. J., and Thompson, J.,* concurred.

On August 6, 1975, the opinion was modified to read as printed above. The petition of the defendants and appellants for a hearing by the Supreme Court was denied October 1, 1975.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.