[Civ. No. 20050.   Second Dist., Div. Two.   June 18, 1954.]

CITY OF PASADENA, Respondent, v. HERMAN PAINE, JR., et al., Defendants; JOSEPH H. STOUT, as Trustee etc., Appellant.

LeSage & Bowman and Thomas W. LeSage for Appellant.

Frank L. Kostlan, City Attorney, Vincent W. Heublein, Senior Deputy City Attorney, and Wendell R. Thompson, Deputy City Attorney, for Respondent.

· FOX, J.—This is an appeal by the defendants from an interlocutory judgment in condemnation.

On February 15, 1952, the city of Pasadena filed condemnation proceedings for the acquisition of certain property in the San Rafael section of the city for a library site. For more than two years prior to filing this action, the board of directors of the city considered various sites in this locality for a branch library and discussed their relative merits. Several trips were made by the board in a body to this area for the purpose of evaluating the sites under consideration. As a result, the site here in question was decided upon.

On February 5, 1952, at a regular session of the city board, the resolution of necessity was introduced and received its first reading, which was by title only. Prior to the regular meeting of the board on February 13, 1952, the directors met informally with the city manager and other department heads to discuss the various matters to come before the board that morning. At that time the resolution was explained to them and discussed by them. Thereupon, when the board officially convened, the resolution received its second reading —again only by title—and was unanimously adopted.

The vital question is whether the proceedings which led to the adoption of the resolution of necessity were valid. Defendants challenge its validity upon two grounds: (1) the failure to have a full reading of the resolution at a regular public session of the board of directors of the city; and (2) the absence of a report on the matter from the city planning commission. Neither of these objections is well founded.

The city does not claim that the resolution of necessity was read in full at any public session of the board of directors but it insists that such reading is not essential under its charter.

Article 2, section 9, subsection (f) of the city charter provides that ordinances and resolutions are the formal acts of the legislative body passed under "legal restrictions" governing action thereon. It further provides no ordinance or resolution shall receive final passage upon the same day that it was introduced. Subsection (e) provides that no ordinance or resolution shall be valid unless it receives the affirmative vote of four members of the board of directors, and that every ordinance and resolution so adopted shall be signed by the chairman, or, in his absence, by the vice chairman, or by four members of the board. Thus the charter enumerates three "legal restrictions" governing action on resolu-

tions. All of these were admittedly complied with by the city. Such "restrictions" are undoubtedly mandatory and the omission of any one of them would be fatal. Had a fourth such "restriction" been intended, i.e., the full reading of a resolution, it would have been included in the charter by appropriate language. Its absence indicates that such a requirement does not fall in the same category with the aforementioned "restrictions."

The procedure to be followed in the introduction of resolutions is covered by ordinance. It adopts Roberts' Rules of Order, which provide for the full reading of resolutions. This parliamentary guide is adopted by legislative bodies to expedite the transaction of their affairs in an orderly fashion. Such rules are therefore procedural and their strict observance is not mandatory. Consequently, a failure to observe one of them is not jurisdictional and does not invalidate action which is otherwise in conformity with charter. requirements. (*McGraw* v. *Whitson,* 69 Iowa 348 [28 N.W. 632, 633]—failure to observe a rule of Roberts' Rules of Order; *Rutherford* v. *City of Nashville,* 168 Tenn. 499 [79 S.W.2d 581, 584]; *Winninger* v. *City of Waupun,* 183 Wis. 32 [197 N.W. 249, 251]; *South Georgia Power Co.* v. *Baumann,* 169 Ga. 649 [151 S.E. 513, 515].)

In McQuillin on Municipal Corporations, volume 4, section 13.42, pages 523-525, the author, in discussing this problem, points out that the mere failure of a municipal legislative body to conform to parliamentary usage will not invalidate its action when the requisite number of members have agreed to the particular measure. Hence, "where an ordinance is enacted in compliance with the charter it will not be held void because in its passage one of the parliamentary rules of the council was violated. So, the council may abolish, suspend, modify or waive its own rules. But, of course, it cannot disregard mandatory charter provisions." In 62 Corpus Juris Secundum, Municipal Corporations, section 416(c), page 799, the principle is stated as follows: "While municipal governing bodies usually adopt or recognize parliamentary law as their rules of order and proceeding, courts ordinarily will not annul or invalidate an ordinance enacted in disregard of parliamentary rule, provided the enactment is made in the manner required by statute. The rules of parliamentary practice are merely procedural, and not substantive." These principles, of course, apply with equal force to resolutions.

The purpose of a parliamentary procedural rule re-

quiring the reading of a resolution in full before it is voted on is to provide assurance that those whose duty is to vote thereon may have some knowledge of its scope and terms before they cast their votes. In the instant case that purpose was adequately served. Not only had the members of the board of directors visited the site in question as a body several times and come to the conclusion that this particular site should be selected, but the resolution of intention had been explained to them and had been discussed and considered by them informally. To require that the resolution be read in full when the board officially convened would have added nothing to the knowledge of the board members. It would simply have been an idle act. In denying defendants' motion for a nonsuit the court summarized the situation as follows: "THE COURT: The evidence in this case shows that the Board at an informal meeting prior to the public meeting and previously thereto had considered this matter, for over a year, and that all of the City Directors were familiar with the matter, knew the general purpose and the general context of the resolution, and that the reading of the resolution in full was not demanded by any City Director, and its reading would have served no useful purpose . . ." Finally, in denying defendants' motion to strike the resolution of necessity from the record, the judge appropriately observed that "certainly no property owner was prejudiced by a failure" to read the resolution in full at the official session of the board.

Defendants vainly insist that it was improper to admit evidence of the explanation, discussion and consideration of the proposed resolution at the informal meeting of the board members prior to the official session of the board. This was simply a convenient means of familiarizing the members of the board with "the general purpose and general context of the resolution" so that when it was brought up formally before the board the members knew, as the court pointed out, "its intent and purpose." It was not, therefore, error to admit such evidence.

In arguing that the resolution of necessity is void because the board of directors did not submit the matter to the city planning commission and that such body did not hold a public hearing and make a report thereof, pursuant to the provisions of section 65360, Government Code, defendants overlook the character of the contemplated public improvement and the authority of a chartered city in making such a decision.

■ Under sections 6 and 8 of article XI of the California Constitution, cities may be empowered in their charter "to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters . . ." By the provisions of its charter the city of Pasadena has brought itself within the condition of the "municipal affairs" sections of article XI of our Constitution (charter of the city of Pasadena, art. 1, § 1.) Pasadena has thereby acquired "the power of 'municipal home rule' with respect to all matters of local or internal concern." (*Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303, 310 [144 P.2d 4].) ■ With respect, therefore, to matters that are "municipal affairs" the city enjoys autonomous rule and is not subject to general laws concerning such affairs. (*Brougher* v. *Board of Public Works,* 205 Cal. 426, 437 [271 P. 487]; *West Coast Adver. Co.* v. *San Francisco,* 14 Cal.2d 516, 522 [95 P.2d 138]; *Arnold* v. *City of San Diego,* 120 Cal.App.2d 353, 358 [261 P.2d 33].)

■ There can be no doubt that the necessity for and location of a branch library to be used by the city's inhabitants and as a part of its library system is a "municipal affair." Section 65360 of the Government Code was therefore not applicable to these proceedings and failure to comply with its provisions did not invalidate the resolution of necessity.

Defendants rely on *Johnston* v. *Marin County,* 31 Cal.2d 66 [187 P.2d 686]. In that case the action complained of was taken by the board of supervisors. ■ It is wholly inapplicable to the instant proceeding because the exception of "municipal affairs" from the general legislative power does not apply to or include the powers and functions of *county* governmental bodies. (Cal. Const., art. XI, § 6; *Nicholl* v. *Koster,* 157 Cal. 416, 420 [108 P. 302].)

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.