[Civ. No. 16558.   First Dist., Div. Two.   Oct. 3, 1955.]

S. F. WILEY, Appellant, v. CITY OF BERKELEY, Respondent.

Francis T. Cornish and Mary Moore Larkin for Appellant.

Fred C. Hutchinson, City Attorney, and Robert T. Anderson, Assistant City Attorney, for Respondent.

KAUFMAN, J.—This is an appeal from a judgment entered upon an order sustaining a demurrer without leave to amend, to the first amended complaint in an action brought to enjoin the city of Berkeley from using a public park as a site for a firehouse. It is appellant's position that the appropriation of dedicated park lands to uses other than park purposes is a nonmunicipal affair and that the abandonment of park lands or a change in their use is regulated exclusively by state law unless such power has been expressly delegated by the Legislature to the city in its charter.

The complaint alleged that plaintiff and other persons in 1921 and 1922 requested the city of Berkeley to acquire as a park a certain triangular parcel of land; that at the instance of plaintiff and others said city thereafter adopted Ordinance No. 760 N.S., and by virtue of such ordinance and pursuant to the Park and Playground Act of 1909, said city declared its intention to create a special assessment district to acquire said parcel of real property for a public park and to condemn it pursuant to the aforesaid act. The assessment district so created included the home of plaintiff.

It was further alleged that the city then commenced an action pursuant to the Park and Playground Act of 1909 to condemn said parcel of realty for a park. On May 16, 1922, an interlocutory judgment was rendered which fixed the price to be paid for said land and dedicated that land to use for a park. The city then levied special assessments against the property located nearby said triangular parcel of property, thereby raising $5,000, the amount of the purchase price. After payment of the purchase price, the Superior Court in and for the County of Alameda, made its final judgment of condemnation declaring that said parcel of property was condemned ''to use of said plaintiff [City of Berkeley] for use

specifically in said complaint, namely, for use as a public park.'' Ever since that date this parcel, known as Fremontia Park, has been maintained as a public park.

On June 29, 1954, the Berkeley City Council determined that a firehouse should be built in Fremontia Park, and, plaintiff alleges, such use of said park is inconsistent with its use as a public park; that no proceedings have been instituted for the abandonment of said park as set forth in sections 38400 through 38418 or sections 38440 through 38462 of the Government Code.

The charter of the city of Berkeley, it is further alleged, contains no provisions regulating the uses to which park lands shall be put or the manner of discontinuing or abandoning the use of park lands.

Berkeley is a charter city which has availed itself of the provisions of article XI, sections 6 and 8, of the California Constitution, which empowers cities ''to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters . . .'' Section 115 of the Berkeley charter provides as follows:

''The City of Berkeley shall have the right and power to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this Charter; provided, however, that nothing herein shall be construed to prevent or restrict the City from exercising or consenting to, and the City is hereby authorized to exercise any and all rights, powers and privileges heretofore or hereafter granted or prescribed by general laws of the State.''

Sections 47 and 47(1) of the Berkeley charter provide as follows:

''General powers of the City:

''Without denial or disparagement of other powers held under the constitution and laws of the State, the City of Berkeley shall have the right and power:

''(1) Public buildings, works and institutions.

''To acquire by purchase, condemnation or otherwise, and to establish, maintain, equip, own and operate . . . parks, playgrounds, place of recreation . . .''

Section 47(5) of the charter reads as follows:

''Land for public purposes.

''To acquire by purchase, condemnation or otherwise, within or without the City, such lands or other property as may

be necessary . . . to provide for and effectuate any other public purpose; and to sell, convey, encumber and dispose of the same for the common benefit.''

It is well established that a ''municipal affairs'' provision in a city charter is a limitation and not a grant of powers, hence a city operating under such a charter may exercise any power in this field subject only to whatever limitations may be found in the charter itself. (*In re Nowak,* 184 Cal. 701 [195 P. 402].) In *Bank* v. *Bell,* 62 Cal.App. 320 [217 P. 538], in deciding that the city of Berkeley, under its charter had plenary power to establish and operate a municipal market, such market being a municipal affair, the court stated, at page 329, that ''since the 'municipal affairs' amendments of 1914 to the constitution, for such cities as have brought themselves within the condition of the amendments, the law is firmly established as follows: The powers of the cities are not derived from the Legislature, but from a freeholders' charter directly provided for by the constitution. The city in its charter may make and enforce all laws and regulations in respect to municipal affairs subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by the general laws. The powers of the city are all-embracing, restricted, and limited by the charter only and free from the interference of the state by general laws. *The result is that the city has become independent of general laws upon municipal affairs. Upon such affairs a general law is of no force.''* (Emphasis ours.) (And see *West Coast Advertising Co.* v. *City & County of San Francisco,* 14 Cal.2d 516 [95 P.2d 138]; *City of Pasadena* v. *Charleville,* 215 Cal. 384, 391-393 [10 P.2d 745].) In *Butterworth* v. *Boyd,* 12 Cal. 2d 140, 146 [82 P.2d 434, 126 A.L.R. 838], it is said: ''Under the liberalizing constitutional amendment of 1914, the charter is not a grant of power but a restriction only, and the municipality is supreme in the field of municipal affairs *even as to matters on which the charter is silent.''* (Emphasis ours.)

Appellant concedes that on the authority of *City of Pasadena* v. *Paine,* 126 Cal.App.2d 93 [271 P.2d 577], the selection of a site for a firehouse is purely a municipal affair. He contends, however, that the resolution of the Berkeley City Council here involved, while dealing with municipal affairs in the matter of selecting a site for a firehouse, goes beyond the realm of municipal affairs in choosing for such site land

14

dedicated as a public park. It is argued that such use is an abandonment of land formerly dedicated to park use.

It is appellant's contention that it has never been decided in this state whether a city in dealing with park lands is dealing with a municipal affair or with a matter of statewide interest.

In the recent case of *Mallon* v. *City of Long Beach*, 44 Cal.2d 199, 211 [282 P.2d 481] (Apr. 1955) deciding that the interest of the city of Long Beach in tidelands granted to it by the state was not acquired as a municipal affair, but subject to a public trust to develop harbor facilities for the benefit of the entire state, the court declared: "(W)e cannot hold that the construction and establishment by the city of Long Beach of storm drains, a city incinerator, a public library, public hospitals, *public parks*, a fire alarm system, off-street parking facilities, city streets and highways, and other expenditures that have been authorized to be made from the 'Public Improvement Fund,' are of such general state-wide interest that state funds could properly be expended thereon. *Such expenditures are for purely 'municipal affairs' within the meaning of section 6 of article XI of the Constitution.* (Citations.) Moreover, they are normal expenditures for a municipal corporation to make, and to hold that a grant of public monies from the state to defray such expenditures is not a gift within the meaning of section 31 of Article IV of the Constitution would render meaningless the express prohibition therein against gifts to 'municipal corporations.'" (Emphasis ours.) Appellant comments that the writer of the aforesaid opinion cited no case holding that the establishment of public parks is a purely municipal affair. While that is true, the Supreme Court has now held in *Mallon* v. *City of Long Beach, supra,* that the matter *is* purely a municipal affair, and this court is bound by that holding even though no case prior thereto may have so held. Appellant has admitted in his closing brief that if this court is to hold that the abandonment of Fremontia Park, which was acquired by the city by its exercise of the right of eminent domain, is a municipal affair, then the judgment should be affirmed.

■ Since the matter is, then, a municipal affair, it would seem that the city may deal with such a park to which it holds title in fee, as it sees fit, subject only to the limitations and restrictions of its own charter. ■ If the charter is silent on the matter of abandonment or change in use of such park, that power nevertheless inheres in such a municipality.

(*Butterworth* v. *Boyd,* 12 Cal.2d 140, 146 [82 P.2d 434, 126 A.L.R. 838].) There is no reference made to the abandonment of city parks or to the change in use of a part or the whole thereof by the city in any part of the charter. Section 47(1) of the charter merely authorizes the city to acquire by purchase, condemnation or otherwise and to establish, own and operate parks. The charter contains no restriction on the city's power over parks.

Appellant contends that the decisions in the cases of *Spinks* v. *City of Los Angeles,* 220 Cal. 366 [31 P.2d 193] and *Ritzman* v. *City of Los Angeles,* 38 Cal.App.2d 470 [101 P.2d 541], which have upheld the power of a city to use park lands for non-park purposes, involve freeholders' charters which expressly provide both for municipal home rule in purely municipal affairs and for the conversion of park lands to the particular nonpark use, and that both decisions are placed on the latter ground, not on the former. It is to be noted, of course, that both these cases were decided long before *Mallon* v. *City of Long Beach, supra.* Furthermore, since the charter there involved contained a more detailed provision than that in the Berkeley charter, it was necessary to decide that such provision was not a restriction on the power which the city was attempting to exercise.

In the Ritzman case the city of Los Angeles acquired the land for park purposes, as the city of Berkeley did in the instant case, through condemnation proceedings under the Park and Playground Act of 1909. As in the present case, assessment districts were formed and the land was paid for with funds derived from this source. Appellant contends that when title was acquired by the city of Berkeley and dedicated to park purposes in connection with condemnation proceedings under the Park and Playground Act of 1909, its title is similar to a title acquired when a private person conveys land to a city for a definite public purpose. In the Ritzman case, it was pointed out, however, that "The fact that the land was dedicated to a certain purpose in connection with the condemnation proceedings results in no different situation, so far as our present problem is concerned, than exists where land is otherwise by ordinance or legislative act dedicated to a certain use, which was the situation in the case of *Spinks* v. *City of Los Angeles, supra.*" The court went on to say that while such improvements are presumed to benefit land within the assessment district, they are for the benefit of the entire community. "We know of no rules giving such an assessment

payer. a vested right in the improvements, providing that the improvements shall perpetually remain in the same form, or providing that they may not later be changed or even abandoned, in the public interest.''

In the Ritzman case the question arose as to whether a highway might be built through a certain park. Section 178 of the Los Angeles charter provided that ''all lands belonging to the city which have heretofore or which hereafter may be set apart or dedicated for the use of the public as a public park, shall forever remain to the use of the public inviolate; provided, however, that the Board of Park Commissioners . . . may authorize the opening, establishment and maintenance of streets or other public ways in or through such parks.'' The court in the cited case said that assuming that the building of this highway (80 feet in width) through this long narrow park would constitute a diversion of a portion of such lands to a purpose inconsistent with their use as a park, was such diversion within the power of the city and its boards? The court noted that the city held title to these park lands in fee, and went on to state at page 474 that:

''Generally speaking, where a private party conveys land to a city for a definite public purpose it cannot be diverted to another and different purpose, at least so long as the conditions of the grant are in force. (*Harter* v. *City of San Jose,* 141 Cal. 659 [75 P. 344].) The main reason for this rule is that in such a case the title remains in the original owner subject to the specified public use. (*Harter* v. *City of San Jose, supra.*) That a different rule applies where the city has acquired title in fee was pointed out in *Slavich* v. *Hamilton,* 201 Cal. 299 [257 P. 60], where the court said: 'The uses to which park property may be devoted depend, to some extent, upon the manner of its acquisition, that is, whether dedicated by the donor, or purchased or condemned by the municipality. A different construction is placed upon dedications made by individuals from those made by the public. The former are construed strictly according to the terms of the grant, while in the latter cases a less strict construction is adopted.' ''

Appellant has contended that the Legislature has provided the means by which lands acquired under the Park and Playground Act of 1909 may be abandoned, and that the city of Berkeley cannot abandon this land for park use without following the procedure outlined in Government Code, sections 38400-38462. It has previously been made clear why these sections do not apply, the matter falling within the

field of municipal affairs rather than an affair of statewide interest, and Berkeley by its charter having availed itself of full power in this field under section 6 of article XI of the California Constitution.

In view of the foregoing, it is clear that the judgment must be affirmed.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 30, 1955.