Opinion
BERNSTEIN, J.
Defendant Henry Stone and defendant Jane Segesman appeal from judgments of conviction of violating section 86.02, subdivision (a) of the Los Angeles Municipal Code (hereafter L.A.M.C.) (speeding in a public park). The records are contained in engrossed settled statements. For the reasons discussed below, we reverse each conviction.
Statement of the Cases and of the Facts
Defendant Henry Stone was arrested on February 18, 1984, by Officer R. W. Lupin of the Los Angeles Police Department for violating L.A.M.C. section 86.02, subdivision (a).[1] Stone appeared in municipal court and was advised of his constitutional rights. He pleaded not guilty to the charge and posted bail. Trial was set for April 19, 1984. At trial, Officer Lupin testified that defendant was going 40 miles per hour in a posted 25-mile-per-hour zone. The zone was located at Griffith Park Drive and the Interstate 5 on- *Supp. 5 ramp. Defendant was clocked by radar. Defendant testified that he knew the speed was 25 miles per hour but he felt that he was not going at a speed that was not safe. He did not think he should be cited but felt that the “officer did only his duty.” The court found defendant guilty as charged and sentenced him to pay a fine plus penalty assessment.
Defendant Jane Segesman was arrested on March 9, 1984, by Officer Ed Sanders of the Los Angeles Police Department for violating L.A.M.C. section 86.02, subdivision (a). On April 2, 1984, she appeared in municipal court and was advised of her constitutional rights. She pleaded not guilty and posted bail. Trial was set for June 11,1984. On the day set for trial, defendant Segesman failed to appear. Bail was forfeited. On June 13, 1984, Segesman filed a motion to vacate the forfeiture and reset the trial date. Trial was reset for July 16, 1984. On July 16, 1984, Officer Sanders testified that, using a radar gun, he clocked defendant going 40 in a 25-mile-per-hour zone. The zone was located on Griffith Park Boulevard. Defendant testified that she was not going 40. The court found her guilty as charged and sentenced her to pay a fine plus penalty assesment.
Both defendants filed timely appeals. Defendant Segesman’s hearing on this appeal was set for December 5, 1985; on that date we took her appeal under submission. On December 26, 1985, the order of submission was vacated and we consolidated these two appeals, finding that each posed the same question of law.
Grounds on Appeal
Defendant Stone cites four grounds Tor appeal: (1) the trial court’s failure to certify his proposed settled statement resulted in a denial of due process; (2) the People failed to demonstrate that the citation did not involve a speed trap; (3) the ordinance at issue here violates due process because it is not definite and certain; and (4) the trial court did not allow him to call witnesses on his own behalf. We base our decision on only the second ground.[2]
Discussion
The Speed Trap Provisions of the California Vehicle Code[3]
*Supp. 6 That California has a strong mandate against speed traps cannot reasonably be doubted. Vehicle Code section 40801 prohibits a peace officer from using a speed trap to arrest a person or to secure evidence of the speed of a vehicle.[4] Section 40803, subdivision (a) prohibits the introduction into evidence at trial of the speed of a vehicle if that evidence is based upon use of a speed trap.[5] Section 40803, subdivision (b) provides that if radar is used to arrest a person for speeding, the People must, as part of their prima facie case, establish that the evidence and testimony which they present is not based upon a speed trap.[6] Section 40804, subdivision (a) provides that a person will be incompetent as a witness if his testimony is based upon use of a speed trap.[7] Section 40805 provides that a court will be without jurisdiction to convict a defendant for speeding if that court admits any evidence or testimony which was secured in violation of section 40801 or which is inadmissible under sections 40803 or 40804.[8]
What constitutes a “speed trap” is explained in section 40802, which provides: “A ‘speed trap’ is either of the following:
“(a) A particular section of a highway measured as to distance and with boundaries marked, designated, or otherwise determined in order that the speed of a vehicle may be calculated by securing the time it takes the vehicle to travel the known distance.
*Supp. 7 “(b) A particular section of a highway with a prima facie speed limit provided by this code or by local ordinance pursuant to paragraph (1) of subdivision (b) of Section 22352, or established pursuant to Section 22354, 22357,22358, or 22358.3, which speed limit is not justified by an engineering and traffic survey conducted within five years prior to the date of the alleged violation, and where enforcement involves the use of radar or other electronic devices which measures the speed of moving objects. The provisions of this subdivision do not apply to local streets and roads.
“For purposes of this section, local streets and roads shall be defined by the latest functional usage and federal-aid system maps as submitted to the Federal Highway Administration. When these maps have not been submitted, the following definition shall be used: A local street or road primarily provides access to abutting residential property and shall meet the following three conditions:
“1. Roadway width of not more than 40 feet.
“2. Not more than one-half mile of uninterrupted length. Interruptions shall include official traffic control devices as defined in Section 445.
“3. Not more than one traffic lane in each direction.” We are concerned here with subdivision (b) of section 40802, the use of radar.
With respect to trials involving the use of radar to prove the People’s case, we held in People v. Halopoff( 1976) 60 Cal.App.3d Supp. 1 [131 Cal.Rptr. 531], that the People have the burden of proving that the defendant was not a victim of a speed trap. We said: “In the trial of cases where radar is involved, questions will inevitably come up concerning the duty of the prosecution on the one hand, or the defendant on the other, to raise the question of the applicability of the anti-speed trap legislation. We believe for the following reasons, that in such prosecutions it is incumbent upon the People, without request from the defendant, to disclose to the court and to the defendant that radar is involved and further, where such is the case, to demonstrate the existence of the engineering and traffic survey required by section 40802, subdivision (b) in order to remove the case from the sanctions of sections 40801,40803,40804 and 40805.” (Id., at Supp. 5.) Later, we specifically stated that the engineering and traffic survey has to be physically produced by the People at trial but that a certified copy of same can be produced in lieu of the original. (People v. Sterritt (1976) 65 Cal.App.3d Supp. 1, 6, fn.4 [135 Cal.Rptr. 522]; People v. Flaxman (1977) 74 Cal.App.3d Supp. 16 [141 Cal.Rptr. 799].)

*Supp. 8
The Evidence Produced at Trial

At the trials in the instant matters, both arresting officers testified that by using radar, they determined that the respective defendants were exceeding the speed limit in the park in which the defendants were arrested. In neither case, however, did the People introduce into evidence as part of their prima facie case, an engineering and traffic survey as required by section 40803, subdivision (b), People v. Halopoff, supra, 60 Cal.App.3d Supp. 1 and People v. Sterritt, supra, 65 Cal.App.3d Supp. 1.

The Parties’ Contentions

Defendant Stone contends that because the People did not introduce into evidence and engineering and traffic survey, they did not establish, as part of their prima facie case, that Officer Lupin’s testimony was not based upon a speed trap. Thus, argues defendant, under section 40805, the trial court was without jurisdiction to render a conviction against him since the court admitted testimony which was secured in violation of section 40801 and which was inadmissible under sections 40803 and 40804.
In contrast, the People contend that defendants’ convictions for violating L.A.M.C. section 86.02, subdivision (a) are not even subject to the provisions of Vehicle Code sections 40801 et seq. The People argue the language of sections 40801 to 40805 makes it clear that the prohibition against evidence obtained by use of a speed trap applies only to violations of the Vehicle Code and not to violations of local ordinances.
The People note that where the language of a statute has a plain and obvious meaning, a court should adopt that meaning without engaging in any further construction. (People v. Belleci (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].) Specifically, they argue that sections 40801, 40803, 40804 and 40805, by their very language, limit their effect to alleged violations, prosecutions and convictions under “this code,” i.e., under the Vehicle Code. The People urge that the words “this code” plainly refer to the California Vehicle Code and should not be taken to refer to local ordinances as well.
Additionally, the People argue that we have only to look at section 40802, subdivision (b) to see that the Legislature did not intend the rules regarding the use of radar evidence to be universally applicable. The People note that section 40802, subdivision (b) specifically exempts “local streets and roads” from its definition of a speed trap.[9] Thus, they argue, it is apparent that *Supp. 9 section 40801 et seq. cannot be construed to apply to violations of a local municipal code. The People conclude that the trial courts did not err in admitting the officers’ testimony into evidence without the production of engineering and traffic surveys.
In rebuttal, defendant Stone argues that the City of Los Angeles cannot pass its own local traffic ordinances regarding speed limits if they conflict with state speed laws and that case law has made it clear that California intends the rules against speed traps to be universally applied. In support of these positions, defendant cites Ex parte Daniels (1920) 183 Cal. 636 [192 P. 442; 21 A.L.R. 1172] and People v. Halopoff, supra, 60 Cal.App.3d Supp. 1. The People dispute these claims, arguing that control of parks is a municipal function and since Los Angeles is a charter city, its ordinance regulating the speed of vehicles in parks prevails over state speed laws.

The Charter City Factor

Article XI, section 5, of the California Constitution allows charter cities (of which Los Angeles is one) plenary power in making and enforcing ordinances and regulations with respect to municipal affairs. Charter city ordinances which govern municipal affairs, if they are adopted pursuant to the city’s charter and if they are not proscribed by the state or federal Constitutions, supersede the general laws of the state with which they are inconsistent. (Pipoly v. Benson (1942) 20 Cal.2d 366, 369 [125 P.2d 482, 147 A.L.R. 515]; Mallon v. City of Long Beach (1955) 44 Cal.2d 199, 209 [282 P.2d 481]; Wiley v. City of Berkeley (1955) 136 Cal.App.2d 10, 14 [288 P.2d 123]; Simons v. City of Los Angeles (1976) 63 Cal.App.3d 455, 468 [133 Cal.Rptr. 721]; People v. Trantham (1984) 161 Cal.App.3d Supp.l, 13-14 [208 Cal.Rptr. 535].) In matters which are of statewide concern, charter cities like all other cities are subject to the general state laws. (Bishop v. City of San Jose (1969) 1 Cal.3d 56, 60 [81 Cal.Rptr. 465, 460 P.2d 137]; Sonoma County Organization of Public Employees v. County of Sonoma (1979) 23 Cal.3d 296, 315-316 [152 Cal.Rptr. 293, 591 P.2d 1].)
“As is made clear in the leading case of Pipoly v. Benson, supra, [20 Cal.2d 366 (125 P.2d 482, 147 A.L.R. 515)] local governments (whether chartered or not) do not lack the power, nor are they forbidden by the Constitution, to legislate upon matters which are not of a local nature, nor is the Legislature forbidden to legislate with respect to the local municipal affairs of a home rule municipality. Instead, in the event of conflict between the regulations of state and of local governments, or if the state legislation discloses an intent to preempt the field to the exclusion of local regulation, the question becomes one of predominance or superiority as between general *Supp. 10 state laws on the one hand and the local regulations on the other. (See also, e.g., Galvan v. Superior Court (1969) 70 Cal.2d 851, 856-866 [76 Cal.Rptr. 642, 452 P.2d 930]; Abbott v. City of Los Angeles (1960) 53 Cal.2d 674, 681-684 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385]; Chavez v. Sargent (1959) 52 Cal.2d 162, 176-177 [339 P.2d 801]; Agnew v. City of Los Angeles (1958) 51 Cal.2d 1, 5 [330 P.2d 385]; Wilson v. Beville (1957) 47 Cal.2d 852, 856-861 [306 P.2d 789]; Eastlick v. City of Los Angeles (1947) 29 Cal.2d 661, 665-666 [177 P.2d 558, 170 A.L.R. 225]; Southern Cal Roads Co. v. McGuire (1934) 2 Cal.2d 115, 123 [39 P.2d 412].)
“If resolution of that question requires a determination as to whether the matter regulated is a state or a municipal affair, then, as declared in Professional Fire Fighters, Inc. v. City of Los Angeles (1963) 60 Cal.2d 276, 294 [32 Cal.Rptr. 830, 384 P.2d 158], ‘Because the various sections of article XI fail to define municipal affairs, it become necessary for the courts to decide, under the facts of each case, whether the subject matter under discussion is of municipal or statewide concern.’ In other words, ‘No exact definition of the term “municipal affairs” can be formulated, and the courts have made no attempt to do so, but instead have indicated that judicial interpretation is necessary to give it meaning in each controverted case. The comprehensive nature of the power is, however, conceded in all the decisions____’ Butterworth v. Boyd (1938) 12 Cal.2d 140, 147 [82 P.2d 434, 126 A.L.R. 838]; see also City of Pasadena v. Charleville (1932) 215 Cal. 384, 392 [5] [10 P.2d 745].) Further, the ‘constitutional concept of municipal affairs ... changes with the changing conditions upon which it is to operate. What may at one time have been a matter of local concern may at a later time become a matter of state concern controlled by the general laws of the state.[Citations.]’ (Pacific Tel. & Tel. Co. v. City & County of San Francisco, supra [(1959)], 51 Cal.2d 766, 771, 775-776; Butterworth v. Boyd, supra.)” Bishop v. City of San Jose, supra, 1 Cal.3d at pp. 62-63, fns. omitted; Weekes v. City of Oakland (1978) 21 Cal.3d 386, 399-400 [146 Cal.Rptr. 558, 579 P.2d 449]; Sonoma County Organization of Public Employees v. County of Sonoma, supra, 23 Cal.3d at p. 316.)
Put simply, the Legislature and the charter cities may legislate both with respect to municipal affairs and matters of statewide concern. However, if there is a conflict between a charter city’s law and a state statute, or if the charter city’s ordinance concerns a field which the Legislature has disclosed an intent to fully occupy, then the courts must decide whether the matter regulated is a local affair or a matter of statewide concern. If it is a municipal affair, the charter city’s ordinance prevails; if it is not a local affair, the general law prevails.
*Supp. 11 Applying these rules to the instant case, we first determine whether there is a conflict between the state speed laws and L.A.M.C. section 86.02, subdivision (a), and whether the Legislature has disclosed an intent to occupy the field to the exclusion of local regulation.

Conflict

It is settled law, as the People acknowledge, that if a local ordinance duplicates a state statute, a conflict exists between the two. (In re Sic (1887) 73 Cal. 142, 148-149 [14 P.405]; Pipoly v. Benson, supra, 20 Cal.2d at pp.370-371; Cohen v. Board of Supervisors (1985) 40 Cal.3d 277, 290-291 [219 Cal.Rptr. 467, 707 P.2d 840].) The problem arises, “... not from a conflict of language, but from the inevitable conflict of jurisdiction which would result from dual regulations covering the same ground.” (Pipoly v. Benson, supra, 20 Cal.2d at p. 371.) In addition, a defendant would be subject to double jeopardy if both the statute and the ordinance were viable. (In re Sic, supra, 73 Cal. at p. 148; Cohen v. Board of Supervisors, supra, 40 Cal.3d at p. 292, fn. 12.)
In the case at hand, state law impliedly provides for a prima facie speed limit of 25 miles per hour on public park streets. (§ 22358.3.)[10] Thus, L.A.M.C. section 86.02, subdivision (a) (insofar as it provides for a speed limit of 25 miles per hour in parks),[11] and section 22358.3 are duplicative of each other; therefore a conflict exists.

Intent to Preempt

The People acknowledge that the state has declared an intent to preempt the entire field of traffic control. They cite section 21 and Rumford v. City of Berkeley (1982) 31 Cal.3d 545 [183 Cal.Rptr.73, 645 P.2d 124], In Rumford, our Supreme Court said: “The state’s plenary power and its preemption of the entire field of traffic control are stated in Vehicle Code section 21: ‘Except as otherwise expressly provided, the provisions of this *Supp. 12 code are applicable and uniform throughout the state and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized therein. ’ (Italics added.) Thus, unless ‘expressly provided’ by the Legislature, a city has no authority over vehicular traffic control. (Pipoly v. Benson, supra, 20 Cal.App.2d 366, 371; Biber Elec. Co. v. City of San Carlos (1960) 181 Cal.App.2d 342, 344 [5 Cal.Rptr. 261].)” (Id., at p. 550, original italics.)
Recognizing that the Legislature has declared an intent to preempt the field of vehicular traffic control[12] and having found that a conflict exists between section 22358.3 and section 86.02, subdivision (a), we must next determine which of those conflicting laws should prevail. We must determine whether control of speed in parks is a municipal or state affair.

Municipal vs. Statewide Matters

Courts have consistently held the matter of parks to be a local concern. (Mallon v. City of Long Beach, supra, 44 Cal.2d at p. 211 [money used for construction of a park was money used for a municipal affair because the establishment of parks is a local concern]; Wiley v. City of Berkeley, supra, 136 Cal.App.2d at p. 14 [charter city had a right to build a firehouse in its park since the disposition and use of parklands is a municipal affair]; Reagan v. City of Sausalito (1962) 210 Cal.App.2d 618, 624-628 [26 Cal.Rptr. 775] [a city’s provision of parks is a local affair]; Simons v. City of Los Angeles, supra, 63 Cal.App.3d at p. 468 [charter city had right to transfer areas of a park to the city’s department of works for use as public buildings and grounds, including use as police training facilities]; People v. Trantham, supra, 161 Cal.App.3d at Supp. 13 [city ordinance proscribing entering, remaining, staying or loitering on park grounds during certain times of the night held proper].)
Thus, the People raise Los Angeles’s right as a charter city to control its parks as grounds for validating the ordinance at issue here. However, the right of a charter city to control its parks does not necessarily control this case because the courts have also held that regulation of traffic on streets is not a municipal affair. (Ex parte Daniels, supra, 183 Cal. at pp. 639, 641 [city’s regulation of speed on its streets];[13] Pipoly v. Benson, supra, 20 Cal.2d *Supp. 13 at p. 369 [city’s regulation of conduct of pedestrians at crosswalks]; County of Los Angeles v. City of Alhambra (1980) 27 Cal.3d 184, 192-193 [165 Cal.Rptr.440, 612 P.2d 24] [city’s parking meter regulations]; Rumford v. City of Berkeley, supra, 31 Cal. 3d at p. 550, fn. 3, and pp. 549-558 [city’s use of barriers in the streets to direct the flow of traffic].) There appears to be no case which decides the exact issue presented here—whether control of vehicular speed in parks is a statewide or municipal concern.
The People attempt to circumvent these cases by arguing “there are streets and then there are streets.” The People differentiate between streets in a park which only provide access to park facilities such as picnic areas and hiking trails, and streets which are thoroughfares running through the park. They point out the ordinance at issue also makes such a distinction in that it provides for a 25-mile-per-hour speed limit on certain park streets (which they describe as the “access” type) but not on others (the thoroughfare type). Those other streets are subject, concede the People, to the Vehicle Code.
The People cite absolutely no authority for this “access use/thoroughfare use” dichotomy which they create. We believe it to be a distinction without a significant difference. We note that the Vehicle Code itself does not so differentiate in its elaborate scheme for control of vehicular speed. The Vehicle Code does not regulate speed only on thoroughfares that cross a city and defer to the city for regulation of speed on the shorter streets which provide access to homes and businesses located within the city. (§§ 22348-22413.) We know of no cases which make distinctions between the types of streets being regulated.
Streets and parks are not magic objects which turn everything that touches them into their likeness. Just as the transversing of traffic on a “thoroughfare” street which runs through a park would not turn the park itself into a matter of statewide concern, so also a shorter, “park-contained” street should not turn the regulation of traffic on that street into a local matter. Nor do we believe that the “municipal affair” cases relating to the rights of charter cities to control their parks, and the “statewide affair” cases relating to the Legislature’s right to control traffic, cannot peacefully coexist. For example, section 21113 allows a city to regulate vehicles on the driveways, paths, parking facilities and grounds of its parks; section 22358.3 authorizes local authorities to enact their own ordinances regulating speed on narrow park streets (such as the ones which the People denominate “access” streets).[14] Thus, we hold *Supp. 14 that the regulation of traffic on streets in parks is not a municipal affair and is therefore properly regulated by the Vehicle Code.
In addition, were we to hold that vehicular speed on streets in parks is a local matter, we would in effect permit charter cities to circumvent the well-established legislative mandate against concealed speed enforcement, inasmuch as section 40802, subdivision (b) would no longer apply to those streets. The state mandate rests upon the belief that it is better to enforce speed laws (and other traffic rules) through visible traffic enforcement than through concealed enforcement, such as speed traps. Visible traffic enforcement results in the prevention of traffic offenses rather than simply apprehending the offender and punishing him after the offense. Visible traffic enforcement also promotes safer driving and the smooth flow of traffic. (Fleming v. Superior Court (1925) 196 Cal. 344, 348-349 [238 P. 88]; People v. Halopoff, supra, 60 Cal.App.3d at Supp. 5.)
This court’s consideration of legislative policy is sanctioned by Bishop v. City of San Jose, supra, 1 Cal. 3d 56, wherein the court said: “In exercising the judicial function of deciding whether a matter is a municipal affair or of statewide concern, the courts will of course give great weight to the purpose of the Legislature in enacting general laws which disclose an intent to preempt the field to the exclusion of local regulation (see Ex parte Daniels (1920) 183 Cal. 636, 639-640 [192 P. 442, 21 A.L.R. 1172]), and it may well occur that in some cases the factors which influenced the Legislature to adopt the general laws may likewise lead the courts to the conclusion that the matter is of statewide rather than merely local concern. However, the fact, standing alone, that the Legislature has attempted to deal with a particular subject on a statewide basis is not determinative of the issue as between state and municipal affairs, nor does it impair the constitutional authority of a home rule city or county to enact and enforce its own regulations to the exclusion of general laws if the subject is held by the courts to be a municipal affair rather than of statewide concern; stated otherwise, the legislature is empowered neither to determine what constitutes a municipal affair nor to change such an affair into a matter of statewide concern.” (Id., at p. 63; accord Sonoma County Organization of Public Employees v. County of Sonoma, supra, 23 Cal.3d at p. 316.)
We believe the prevention of crime, safety on the highways and the smooth flow of traffic are matters of statewide concern, whether the street in question is in a park, a residential or commercial district or whether it is an interstate highway.

*Supp. 15
The Issue of Legislative Authorization

Finally, the People argue that section 21 evidences an intent by the Legislature to permit some local legislation with respect to traffic control.[15] They contend even though a city’s power to enact traffic regulations is very limited, nonetheless L.A.M.C. section 86.02, subdivision (a) is a proper ordinance because it was enacted pursuant to Vehicle Code section 21113. Section 21113 provides in pertinent part: “(a) No person shall drive any vehicle or animal, nor shall any person stop, park, or leave standing any vehicle or animal, whether attended or unattended, upon the driveways, paths, parking facilities, or the grounds of any public school, state university, state college, unit of the state park system, county park, municipal airport, rapid transit district, transit development board, or any property under the direct control of the legislative body of a municipality or any state, county, or hospital district institution or building, or any educational institution exempted in whole or in part from taxation, or any harbor improvement district or harbor district formed pursuant to Part 2 (commencing with Section 5800) or Part 3 (commencing with Section 6000) of Division 8 of the Harbors and Navigation Code, or state grounds served by the California State Police, except with the permission of, and upon and subject to any condition or regulation which may be imposed by the legislative body of the municipality, or the governing board or officer of the public school, state university, state college, county park, municipal airport, rapid transit district, transit development board, or state, county, or hospital district institution or building, or educational institution, or harbor district, or the Director of Parks and Recreation regarding units of the state park system or the state agency with jurisdiction over the grounds served by the California State Police.
“(c) When any governing board, legislative body, or officer permits public traffic upon the driveways, paths, parking facilities, or grounds under their control then, except for those conditions imposed or regulations enacted by the governing board, legislative body, or officer applicable to the traffic, all the provisions of this code relating to traffic upon the highways shall be applicable to the traffic upon the driveways, paths, parking facilities, or grounds.” (Italics added.)
While we agree with the People that section 21113 works to allow a municipality to establish certain traffic regulations for a city park and while we *Supp. 16 agree that such regulations will take precedence over similar provisions in the Vehicle Code which regulate traffic upon the highways, we do not agree that L.A.M.C. section 86.02, subdivision (a) could properly be enacted pursuant to section 21113.
“Keeping in mind that the delegation of power [to local governments] to prescribe traffic rules is strictly construed ...” (Rumford v. City of Berkeley, supra, 31 Cal.3d at p. 550, citation omitted) and given our responsibility to construe statutes in accordance with the ordinary meaning of the language used in them (Code Civ. Proc., § 16; People v. Belleci, supra, 24 Cal.3d at p. 884; People v. Moore (1964) 229 Cal.App.2d 221, 228 [40 Cal.Rptr. 121]) we interpret section 21113 to relate solely to the areas it mentions, i.e., to the driveways, paths, parking facilities and the grounds of public parks and not to streets and roads within the parks. The use of the word “highway” in subdivision (c) points up the difference between travel on the driveways, paths, etc. in a park and travel on the roads and streets in a park. Sections 360 and 590 refer to “highways” and “streets” as “ways for vehicular travel.” and do not refer to driveways, paths, grounds and parking facilities.
In addition, it is sections 22348 through 22413 which regulate the speed of vehicles in this state. A review of those sections reveals a comprehensive general scheme, which scheme includes provisions for a local governing body, under certain conditions, to set its own speed limits. §§ 22352, subd. (b)(1), 22357, 22358, 22358.3 and 22358.4.) Thus, a legislative intent to allow a local government to fix speeds on streets in parks would be logically found in those sections rather than in section 21113. Indeed, such an intent is found in section 22358.3 which provides that a local authority may, under certain circumstances, reduce the state’s prima facie speed limit in parks.[16] If section 21113 worked as the People contend it does, i.e., if it gave a local authority the power to set speed limits for streets and roads in a park, then the Legislature would not have had to also give that same power via section 22358.3. We must assume that the Legislature did not intend to duplicate authority.
A look at section 40802, subdivision (b) reveals that the Legislature included, in its definition of speed traps, park speed limits which are provided by or enacted pursuant to section 22358.3. Were we to hold that L.A.M.C. section 86.02, subdivision (a) was properly enacted pursuant to section 21113, then drivers cited for speeding on park streets with speed limits controlled by or enacted pursuant to section 22358.3 would be afforded the Legislature’s protections against speed traps, whereas drivers *Supp. 17 cited on park streets having speed limits enacted pursuant to section 21113 would not be afforded such protections. Given California’s strong policy against speed traps, it is not logical to believe that such a result was intended by the Legislature.
In conclusion, control of vehicular speed on all streets in public parks is a matter of statewide concern. Because the Legislature has disclosed an intent to preempt the field of traffic control and because L.A.M.C. section 86.02, subdivision (a) conflicts with section 22358.3, the state law prevails. Thus, defendants’ driving was governed by the Vehicle Code. As the People failed to introduce an engineering and traffic survey at trial to justify the posted speed limit, the convictions cannot stand.
The judgments of conviction are reversed.
Cooperman, P. J., and Reese, J., concurred.

Subdivision (a) provides: “(a) No person shall drive a vehicle on any park road or other way, or travel in any public park at a speed greater than is reasonable or prudent, having due regard for the traffic on and the surface and width of the road or way, and in no event at a speed in excess of 25 miles per hour; provided, however, that the maximum speed limit on Riverside Drive from Los Feliz Boulevard northerly on Riverside Drive to the junction of the city limits of the City of Los Angeles and the City of Glendale shall be 45 miles per hour; and provided, further, that the maximum speed limit established herein shall not apply to those streets in and through park lands which are opened, established and maintained by virtue of permission given by the Board of Recreation and Park Commissioners, approved by the City Council by ordinance.”

Defendant Segesman’s appeal appears to rest solely on the credibility of the arresting officer. Although she does not raise the speed trap issue, under section 40805 of the Vehicle Code, her judgment of conviction is void if she was arrested pursuant to a speed trap. (See fn. 8.) Thus, that issue is properly considered in her appeal as well.

Unless otherwise indicated, all statutory references herein are to the Vehicle Code.

Section 40801 provides: “No peace officer or other person shall use a speed trap in arresting, or participating or assisting in the arrest of, any person for any alleged violation of this code nor shall any speed trap be used in securing evidence as to the speed of any vehicle for the purpose of an arrest or prosecution under this code.”

Section 40803, subdivision (a) provides: “(a) No evidence as to the speed of a vehicle upon a highway shall be admitted in any court upon the trial of any person for an alleged violation of this code when the evidence is based upon or obtained from or by the maintenance or use of a speed trap.”

Section 40803, subdivision (b) provides: “(b) In any prosecution under this code of a charge involving the speed of a vehicle, where enforcement involves the use of radar or other electronic devices which measure the speed of moving objects, the prosecution shall establish, as part of its prima facie case, that the evidence or testimony presented is not based upon a speed trap as defined in subdivision (b) of Section 40802. Evidence that a traffic and engineering survey has been conducted within five years of the date of the alleged violation or evidence that the offense was committed on a local street or road as defined in subdivision (b) of Section 40802 shall constitute a prima facie case that the evidence or testimony is not based upon a speed trap as defined in subdivision (b) of Section 40802.”

Section 40804, subdivision (a) provides: “(a) In any prosecution under this code upon a charge involving the speed of a vehicle, any officer or other person shall be incompetent as a witness if the testimony is based upon or obtained from or by the maintenance or use of a speed trap.”

Section 40805 provides: “Every court shall be without jurisdiction to render a judgment of conviction against any person for a violation of this code involving the speed of a vehicle if the court admits any evidence or testimony secured in violation of, or which is inadmissible under this article.”

The People did not contend at trial, nor do they contend on appeal, that defendants’ alleged violations occurred on a “local street or road,” as that phrase is used in section 40802, subdivision (b).

Section 22358.3 provides: “Whenever a local authority determines upon the basis of an engineering and traffic survey that the prima facie speed limit of 2 5 miles per hour in a business or residence district or in a public park on any street having a roadway not exceeding 25 feet in width, other than a state highway, is more than is reasonable or safe, the local authority may, by ordinance or resolution, determine and declare a prima facie speed limit of 20 or 15 miles per hour, whichever is found most appropriate and is reasonable and safe. The declared prima facie limit shall be effective when appropriate signs giving notice thereof are erected upon the street.”

We do not concern ourselves in this opinion with the validity of L.A.M.C. section 86.02, subdivision (a) as a whole. Rather, we address only the validity of its 25-mile-per-hour provision.

Vehicular traffic control includes speed limits. See footnote 13.

In the introduction to the California Vehicle Code, Daniels is described thusly: “This decision related to the long continued and most irritating conflicts between the requirements of local ordinances and the State Vehicle Act. Such conflicts consisted in the main of differences in the rules of the road, including those governing the overtaking and passing of street cars and the speed limits. In [Daniels] the Supreme Court decided that the rules of the road, including speed limits, as set forth in the Vehicle Act, applied throughout the State. The decision held that a municipal ordinance could not prevail if in conflict with the State law.” (See Nida, California Motor Vehicle Legislation, 66 West’s Ann. Veh. Code (1971 ed.) p. LXXV.)

Section 22358.3 is set out at footnote 10. It allows local authorities to decrease the prima facie speed limit in parks, in certain situations, from 25 miles per hour to 20 or 15 miles per hour. Section 40802, subdivision (b) makes it clear, however, that the reduced speed limit is subject to the speed trap provisions of the Vehicle Code.

Section 21 provides: “Except as otherwise expressly provided, the provisions of this code are applicable and uniform throughout the State and in all counties and municipalities therein, and no local authority shall enact or enforce any ordinance on the matters covered by this code unless expressly authorized herein.”

See footnote 10.